**Wilbur P. HOLLAR and Ruth Carol Hollar, Appellants,**

v.

**UNITED STATES of America, Appellee.**

Nos. 2:93CV00714, 2:93CV00729.

United States District Court,
M.D. North Carolina,
Winston–Salem Division.

Aug. 8, 1994.

Wilbur P. Hollar and Ruth Carol Hollar, pro se.

Thomas Holderness, U.S. Dept. of Justice, for US (IRS).

## MEMORANDUM OPINION

TILLEY, District Judge.

This opinion consolidates two bankruptcy appeals brought by appellants Wilbur and Ruth Hollar. In civil case number 2:93CV00714, the Hollars appeal the Bankruptcy Court's order in their Chapter 13 bankruptcy proceeding (Bankr. Case No. 93–11389) allowing the Internal Revenue Service's secured and priority claims against the bankruptcy estate. In the second case, civil case number 2:93CV00729, the Hollars appeal the Bankruptcy Court's order dismissing Counts II and IV of their adversary proceeding (Ad.Pro. No. 93–2987) against the United States. For the reasons stated below, the Bankruptcy Court's order appealed in case number 2:93CV00714 is AFFIRMED. The order appealed in case number 2:93CV00729 as to Count II is VACATED and REMANDED with instructions; the order dismissing Count IV is AFFIRMED.

### I.

The Hollars commenced a voluntary bankruptcy petition under Chapter 13 on April 29, 1993. On June 3, and then again on June 9, 1993, the United States filed proofs of claim with the Bankruptcy Court. The Hollars objected to the government's claim on June 28, 1993. On October 13, 1993, the Bankruptcy Court allowed the government's secured claim for 1989 and 1990 tax liability in the amount of $15,641.10 and a priority claim for estimated tax liability of $30,000.00 for 1991 and 1992.

### A.

Dr. Hollar and Mrs. Hollar run a private chiropractic office in Kernersville, North Carolina. They derive income from the operation of this office and Dr. Hollar's work as a chiropractor.[1] The Hollars object to the government's claims on the ground that they are not within the category of people classified as "taxpayers" by the Internal Revenue Code.[2]

■ 26 U.S.C. section 7701 defines the term "taxpayer" as "any person subject to any internal revenue tax." 26 U.S.C.A. § 7701(14) (West 1989 & supp. 1993). The Hollars are "individuals" as that term is commonly used, and as it appears in the Internal Revenue Code's definition of "person." 26 U.S.C.A. § 7701(a)(1) (West 1989 & supp. 1993) (an individual is a "person"). The Hollars are, therefore, "persons" subject to the Internal Revenue Code.

26 U.S.C. section 1 imposes a tax upon the income of every single or married individual. The Hollars admit that they derive income from their chiropractic business. As individuals with income, they are subject to the internal revenue tax imposed by 26 U.S.C. section 1. Accordingly, the Hollars fall squarely within the code's definition of "taxpayer."

The Hollars' objection to the government's secured and priority claims on the basis that the Internal Revenue Code does not apply to them and that they are not taxpayers is without merit.

### B.

■ The Hollars also appeal the Bankruptcy Court's determination with respect to the amount of the claims allowed. The Hollars contend that they were unaware that the bankruptcy hearing was an evidentiary hearing and that they were not given an opportunity to put on evidence.

The Hollars received a standard notice of hearing in both cases. The operative lan-

1. These facts were conceded by Dr. Hollar at oral argument before this Court. (Hearing transcript at 24–25).

2. The Hollars argue that they are free, sovereign and natural citizens of North Carolina and, as such, that they are not subject to the jurisdiction of the United States Congress nor do they incur tax liability under the Internal Revenue Code. This argument is frivolous. As residents of North Carolina, the Hollars are subject to laws passed by the United States Congress. As noted by the Ninth Circuit Court of Appeals when passing on a nearly identical argument, "advancement of such utterly meritless arguments is now the basis for serious sanctions imposed on civil litigants who raise them." *United States v. Studley*, 783 F.2d 934, 937 n. 3 (9th Cir.1986). Sanctions are not appropriate in this case, but the Hollars are now on notice that this argument is not to be raised again before this Court.

guage in the notice pertaining to their objection to the government's claim is:

PLEASE TAKE NOTICE that a hearing will be held ... to consider and act upon the following:

Objection filed by debtors ... to Claim No. 13 of Internal Revenue in the sum of $64,436.24....

Motion by Creditor Internal Revenue Service for Summary Judgment with respect to debtors' objection to claim of the Internal Revenue Service.

While the Hollars are not attorneys, this notice was sufficient to inform them that the Bankruptcy Court was going to hear evidence and act upon their objection to the government's claim.

■ The Hollars maintain that, even if they had proper notice, they were not given an opportunity to put on evidence at the bankruptcy hearing. However, following the government's presentation of evidence as to the amount of its claim, Dr. Hollar's cross examination of the revenue agent was directed at establishing that the Hollars were not taxpayers. Upon the Bankruptcy Court holding that the Hollars were taxpayers, Dr. Hollar declined the court's invitation to ask further questions of the revenue agent in order to challenge the amount of the claims. Accordingly, the Hollars did have an opportunity to challenge the amount of the government's claims.

The Hollars also argue that the Bankruptcy Court's findings were not based on substantial evidence. To the contrary, the government put on sufficient evidence, based on tax returns filed by the Hollars, as to the amount of the claim for 1989 and 1990. The Bankruptcy Court's order allowing the government's secured claim in the amount of $15,641.10 is AFFIRMED.

The Bankruptcy Court's order also allows an unsecured priority claim in the amount of $30,000.00, based on the Hollars' estimated tax liability for the 1991 and 1992 tax years. By its own order, the Bankruptcy Court makes this finding subject to modification if the Hollars file the required returns to establish with certainty the amount of their tax liability for 1991 and 1992. The Bankruptcy

Court's order was based on substantial evidence which the Hollars did not contest. No error of law has been identified and the Bankruptcy Court's order allowing a priority claim in the amount of $30,000.00 is AFFIRMED.

### C.

For the reasons stated in Parts I(A) and (B), the Bankruptcy Court's order in bankruptcy case number 93–11389 is, in all respects, AFFIRMED. An order in district court case number 2:93CV00714 will be so entered.

### II.

On May 23, 1993, the Hollars filed a four count adversary proceeding against the United States in the Bankruptcy Court. The Hollars appeal the Bankruptcy Court's order dismissing Counts II and IV.

### A.

In Count II, the Hollars seek, under 11 U.S.C. sections 548 and 522(h), to set aside an IRS tax sale of certain real property. The Hollars allege that the sale of their property was constructively fraudulent because of procedural defects which caused the property to be sold for substantially less that its reasonably equivalent value.

Both parties have argued the issue of standing in briefs to this Court. However, the Bankruptcy Court did not base its dismissal of Count II on the standing question. Rather, Count II was dismissed after the following colloquy:

"THE COURT: You are not contending the Internal Revenue Service Purchased this property, are you?

MR. HOLLAR: NO...."

(Bankr.Hearing Transcript at 52). Then a few lines later,

"THE COURT: All right. On Count II, the Court finds that no property has been transferred to Internal Revenue Service and accordingly relief under that count is denied."

(Bankr.Hearing Transcript at 53). While it is not absolutely clear, it appears that the

Bankruptcy Court dismissed Count II because it determined that there was no "transfer" of property.

■ To the extent that the Bankruptcy Court holds that an IRS tax sale is not a "transfer" to which section 548 can apply, this Court disagrees. Section 548 provides that a "transfer of an interest of the debtor" may be set aside as fraudulent or constructively fraudulent under certain circumstances. 11 U.S.C.A. § 548 (West 1993). Section 101(54) defines "transfer" as "every mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing of or parting with property or an interest in property, including retention of title as a security interest and foreclosure of the debtor's equity of redemption." 11 U.S.C.A. § 101(54) (West 1993). As a general proposition, forced sales such as mortgage foreclosures and tax sales are involuntary transfers of property in which the debtor retains an interest, and therefore are transfers to which section 548 may apply. *See, e.g., In re Lakeview Investment Group, Inc.,* 40 B.R. 449, 454 (Bankr.E.D.N.C.1984) (foreclosure sale is a transfer); *In re Allegheny Int'l Credit Corp.,* 128 B.R. 125 (W.D.Pa.1991) (real estate tax sale is a transfer). *Cf., Moureau v. Glen Inv.,* 147 B.R. 441 (Bankr. N.D.Ill.1992) (transfer under Illinois law occurs at expiration of redemption period rather than at time of sale).

■ 11 U.S.C. section 548 is routinely used to challenge the sale of property which has been foreclosed upon and sold under state mortgage law. *See, e.g., In re Littleton,* 888 F.2d 90 (11th Cir.1989); *In re Lakeview Investment Group, Inc.,* 40 B.R. 449; *In re Lindsay,* 98 B.R. 983 (Bankr.S.D.Cal. 1989); *see also, BFP v. Resolution Trust Corp.,* —— U.S. ——, 114 S.Ct. 1757, 128 L.Ed.2d 556 (1994) (limiting reasonably equivalent value challenges under § 548 where mortgage foreclosure sale complies with state law). The Internal Revenue Code

provisions under which the Hollars' property was seized and sold provide a tax debtor with rights and remedies which are, for the purposes of this analysis, indistinguishable from the rights a debtor has under mortgage law. *See* 26 U.S.C.A. § 6337(a) (tax debtor has pre-sale redemption rights); § 6337(b) (tax debtor has post-sale redemption rights); § 6342 (debtor has right to any surplus proceeds from a tax sale); § 6335 (procedural requirements for sale of seized property). Accordingly, the Internal Revenue Service's sale of the Hollar's property at the tax sale was a "transfer," as defined by section 101(54), of property in which the Hollars retained an interest on the date of sale.[3] *Cf., In re Slack–Horner Foundries Co.,* 971 F.2d 577 (10th Cir.1992) (discussing section 548(d)(1) provision defining when transfer occurs).

The Bankruptcy Court's dismissal of Count II on the ground that there was no transfer to which section 548 could apply is VACATED.

### B.

The government steadfastly argues that the order dismissing Count II should be affirmed because the Hollars, as Chapter 13 debtors, do not have standing to sue under 11 U.S.C. section 548(A)(2) to set aside an Internal Revenue Service tax sale as constructively fraudulent.[4]

■ There are a number of reported decisions holding that a Chapter 13 debtor does have standing to sue under section 548 and other Chapter 5 avoidance powers. *See, e.g., In re Boyette,* 33 B.R. 10 (Bankr.N.D.Tex. 1983) (Chapter 13 debtor has standing to sue under section 544); *In re Einoder,* 55 B.R. 319 (Bankr.N.D.Ill.1985) (Chapter 13 debtor has full avoidance powers because practical role of a Chapter 13 trustee makes the debtor the most appropriate party to pursue avoidance litigation); *In re Ottaviano,* 68 B.R. 238 (Bankr.D.Conn.1986) (legislative

---

**3.** The fact that the Hollars' interest in the property may be worthless because no reasonable sale price would satisfy the liens is irrelevant to this discussion because a successful challenge to the sale price as inadequate will reduce the Hollars' remaining tax liability.

**4.** The parties have not provided and the court has not found appellate authority on this question. The bankruptcy courts and district courts are divided on this question and similar questions with respect to other Chapter 5 avoidance powers.

history, the realities of bankruptcy practice and the role of a Chapter 13 trustee require that the debtor have standing to set aside fraudulent transfers under section 548); *In re Freeman*, 72 B.R. 850, 854 (Bankr.E.D.Va. 1987) (Although trustee is the only party with actual standing, legislative history suggests avoidance powers can be shared and in a Chapter 13 proceeding where the debtor is practically the representative of the estate; it would be inequitable not to allow the debtor to use avoidance power and would result in a windfall to creditors because of the trustee's failure to act). While acknowledging the preceding authority, and several compelling arguments therein, this Court agrees with the cases cited *infra*, that a Chapter 13 debtor, excepting the provisions of section 522(h), does not have standing to use the trustee's section 548 avoidance power.

Section 548 provides in part, "the *trustee* may avoid any transfer of an interest of the debtor in property,...." 11 U.S.C.A. § 548 (West 1993). Section 1303 provides, "Subject to any limitations on a trustee under this chapter, the debtor shall have, exclusive of the trustee, the rights and powers of a trustee under sections 363(b), 363(d), 363(e), 363(f), and 363(*l*), of this title." 11 U.S.C.A. § 1303 (West 1993). Section 1107 provides in part, "Subject to any limitations on a trustee serving in a case under this chapter, ... a debtor in possession shall have all the rights ... and powers ... of a trustee serving in a case under this chapter." 11 U.S.C.A. § 1107 (West 1993). The first point observed from the text of these statutes is that section 548 expressly grants the avoidance power to the *trustee* without mention of debtors. Second, Congress specifically enumerated those trustee powers which a Chapter 13 debtor may exercise exclusive of the trustee. That list of powers does not include the section 548 avoidance power. Finally, Congress has provided, contrary to its statement in section 1303, that a Chapter 11 debtor in possession has all the rights and powers of a trustee.

It is obvious that Congress could have given Chapter 13 debtors the same broad sweep of powers given in Chapter 11 but chose not to do so. This Court agrees with those courts which have held that there is no statutory authority in Chapter 13 which grants a Chapter 13 debtor independent standing to sue under the trustee's section 548 avoidance power. *See, In re Driscoll*, 57 B.R. 322 (Bankr.W.D.Wis.1986) (Section 1303 does not grant avoidance powers of Chapter 5 to a Chapter 13 debtor, legislative history does not imply that these powers are concurrently held); *In re Mast*, 79 B.R. 981 (Bankr. W.D.Mich.1987) (there is no statutory authority for a Chapter 13 debtor to use the Chapter 5 avoidance powers); *In re Perry*, 90 B.R. 565 (Bankr.S.D.Fla.1988) (section 522(h) provides a Chapter 13 debtor's only standing with respect to trustee's avoidance powers); *In re Jardine*, 120 B.R. 559 (Bankr.D.Idaho 1990) (debtors hold some power concurrently with trustee but the code does not allow a debtor to exercise powers without the cooperation of trustee except in section 522); *In re Tillery*, 124 B.R. 127 (Bankr.M.D.Fla.1991) (section 1303 provides the exclusive grant of trustee power to a Chapter 13 debtor); *In re Henderson*, 133 B.R. 813 (Bankr.W.D.Tex.1991) (section 1303 does not provide avoidance power and section 522(h) is limited by 522(c)(2)(B) where a tax lien is involved); *In re Redditt*, 146 B.R. 693 (Bankr.S.D.Miss.1992) (debtor does not possess power to avoid transactions except to the extent granted under section 522(h)); *In re Colandrea*, 17 B.R. 568 (Bankr.D.Md.1982) (Chapter 13 debtor has no standing to exercise trustee's section 547 avoidance power).

### C.

▪ The conclusion that a Chapter 13 debtor does not have independent standing to sue under section 548 is not determinative because the Hollars also seek to set aside the tax sale under the avoidance powers of section 522. Section 522(h) plainly allows a debtor to use section 548 to avoid involuntary transfers of exempt property under certain circumstances. Section 522(h) provides:

The debtor may avoid a transfer of property of the debtor or recover a set off to the extent that the debtor could have exempted such property under subsection (g)(1) of this section if the trustee had avoided the transfer, if—

(1) such transfer is avoidable by the trustee under section ... 548 ...; and

(2) the trustee does not attempt to avoid such transfer.

11 U.S.C.A. § 522(h) (West 1993). If a debtor meets each element of section 522(h), he may acquire standing to sue under section 548 to set aside a transfer of the debtor's property. The property to which section 522(h) standing applies is designated by section 522(g), which provides:

Notwithstanding sections 550 and 551 of this title, the debtor may exempt under subsection (b) of this section property that the trustee recovers under section 510(c)(2), 542, 543, 550, 551, or 553 of this title, to the extent that the debtor could have exempted such property under subsection (b) of this section if such property had not been transferred, if—

(1)(A) such transfer was not a voluntary transfer of such property by the debtor; and

(B) the debtor did not conceal such property;

11 U.S.C.A. § 522(g) (West 1993). The result is that a debtor may, through section 522(h), use section 548 to set aside fraudulent transfers of property that the debtor could have exempted under section 522(b)—if that property was a part of the bankruptcy estate, the transfer was involuntary and the property was not concealed by the debtor. The Hollars are within sub-section (1) of section 522(g). However, in order to determine whether the Hollars are within section 522(g), the Court must first determine whether the property sold by the IRS could have been exempted by the Hollars under section 522(b). The Court is unable to make that determination because the necessary facts are not present in the record at this time.

▮ It is worth noting at this point that section 522(c) limits the property which a debtor may exempt under section 522(b) and provides as follows:

Unless the case is dismissed, property exempted under this section is not liable during or after the case for any debt of the debtor that arose, or that is determined under section 502 of this title as if such debt had arisen, before the commencement of the case, except—

(1) [inapplicable]; or

(2) a debt secured by a lien that is—

(A) [inapplicable]

(B) a tax lien, notice of which is properly filed; or

(3) [inapplicable]

11 U.S.C.A. § 522(c) (West 1993). The effect of section 522(c)(2)(B) is that a debtor may not avoid a tax lien on otherwise exempt property by invoking avoidance powers granted under section 522(h). Therefore, a Chapter 13 debtor does not have standing to sue under 522(h) and section 545 to *avoid a tax lien* even with respect to exempt property, as exempt property remains liable for a properly perfected tax lien. *In re Perry,* 90 B.R. 565 (debtor can avoid lien as to exempt property but no debtor can exempt property from a properly perfected tax lien); *In re Henderson,* 133 B.R. 813 (exempt property remains liable for a tax lien that has been properly filed so that a debtor may not use section 545 under section 522(h)). However, the Hollars do *not* seek to *avoid the tax lien* under section 545, rather they seek to set aside the sale of their property as constructively fraudulent (under section 548) because, they allege, the property was sold at a procedurally deficient sale for less than reasonably equivalent value. In this case, because the Hollars do not seek to avoid the tax lien under section 545, but challenge the tax sale as constructively fraudulent under section 548, section 522(c)(2)(B) does not negate their potential standing under section 522(h).

### D.

As Chapter 13 debtors, the Hollars *only* have standing to sue to set aside a fraudulent transfer under section 548 if they first meet every element of section 522(h) (including the related provisions of 522(g)(1), (b), (c) and (d)). The Court is unable to determine whether the Hollars in fact have standing to sue under sections 522(h) and 548 because the necessary facts are absent from the record.

The Bankruptcy Court's order dismissing Count II will be VACATED and the case remanded for further proceedings. On remand the Bankruptcy Court should determine whether the Hollars have standing under section 522(h) to invoke section 548. If the Bankruptcy Court determines that the Hollars do have standing under section 522(h), the only aspect of this lawsuit which remains is the claim under section 548 through section 522(h). Accordingly, the Hollars should be prepared to present evidence, at such time as they are directed to appear by the Bankruptcy Court, to establish that they have standing under 522(h) and to establish the elements of their claim under section 548.

### E.

The Bankruptcy Court's order also dismissed Count IV of the adversary proceeding which sought a declaration that the Hollars are not taxpayers. As discussed above, the Hollars are taxpayers and the order dismissing Count IV will be AFFIRMED.