**In re Patricia Ann GARDNER, Debtor.**

**Patricia Ann GARDNER, Plaintiff,**

v.

**Renee TYSON a/k/a Renee Jefferson, Asmar Tyson,**

**and**

**Edward Sparkman, Trustee, Defendants.**

**Bankruptcy No. 97–31965DAS.**

**Adversary No. 97–1088DAS.**

United States Bankruptcy Court,
E.D. Pennsylvania,
Philadelphia Division.

Feb. 24, 1998.

Timothy Zearfoss, Lansdowne, PA, for Debtor.

Julius E. Crawford, Philadelphia, PA, for Defendants.

Edward Sparkman, Philadelphia, PA, Standing Chapter 13 Trustee.

Frederic Baker, Assistant U.S. Trustee, Philadelphia, PA, U.S. Trustee.

### OPINION

DAVID A. SCHOLL, Chief Judge.

### A. INTRODUCTION

The instant proceeding ("the Proceeding"), initiated by PATRICIA ANN GARDNER ("the Debtor") against the transferee of her home at 5321 North 16th Street, Philadelphia, Pennsylvania ("the Home"), realtor RE-NEE TYSON, a/k/a RENEE JEFFERSON ("the Realtor"), and the Realtor's subsequent-transferee-son, ASMAR TYSON ("the Son;" with the Realtor, "the Defendants"), faces several procedural and substantive hurdles. While we conclude that a claim under the pertinent Pennsylvania state fraudulent conveyance law is not barred by limitations and that, with the cooperation of the Standing Chapter 13 Trustee, EDWARD SPARK-MAN, ESQUIRE ("the Trustee"), the parties could be realigned to render the claims set forth in the Proceeding actionable, we find that the Debtor has not met her burden of proving that she failed to receive "reasonably equivalent value" from the Realtor in exchange for the Home, particularly in light of the Realtor's post-transfer remittance of $13,942.28 to the mortgagee of the Home. Therefore, judgment is entered in favor of the Defendants on all counts.

### B. PROCEDURAL AND FACTUAL HISTORY

The Debtor filed the underlying individual Chapter 13 bankruptcy case on October 1, 1997. The Debtor's plan modestly proposes payments of $39.43 for 36 months, to be distributed to a claim of a creditor which financed the purchase of her 1988 Mazda automobile, crammed down to the $1,000 alleged value of this vehicle.

However, the Debtor apparently formulated more ambitious goals before or immediately after filing this case. On October 24, 1997, she filed the instant Complaint seeking to set aside the March 5, 1995, transfer of the Home to the Realtor. The original Complaint contained four Counts, two claims each under both 11 U.S.C. § 548(a)(2) and 11 U.S.C. § 544(b), incorporating 12 Pa.C.S. § 5104. The Complaint alleges two claims that the Debtor was insolvent when the transfer was made and two claims that she "became insolvent" as a result of the transfer under both federal and state law. The named Defendants included the Trustee.

The Defendants (excluding the Trustee) filed an Answer to the Complaint on the first date of trial, December 11, 1997. While the Answer denies the Complaint's averments, it invokes no affirmative defenses, and thus the invocation of any defense based upon applicable statutes of limitations is conspicuously absent. Moreover, the Defendants' counsel appeared late on the trial date, after the Debtor's counsel had departed believing that he could move for judgment by default. When the Debtor learned of the Defendants' response to the Complaint, he graciously agreed to continue the trial until February 3, 1998. In the meantime, he also filed an ultimately unopposed motion seeking to amend the Complaint to revise the averment of the date of the transfer to read March 5, 1996, and to add three Counts to the Complaint. Two of these additional Counts sought damages for the Defendants' creation of a liability of the Debtor to her mortgagee by failing to make the post-transfer mortgage payments, one based on a violation of contract theory and one based upon common-law fraud. The third additional count stated a claim under the Pennsylvania law prohibit-

ing certain unfair and deceptive practices, 73 P.S. § 201–1, *et seq.* ("UDAP"), arising from the Debtor's alleged fraud in misrepresenting that she had the ability to make the mortgage payments.

At trial, the Debtor testified that she purchased the Home on August 8, 1980, with her former husband. After a period of marital strife in the early 1990's, during which she and her ex-husband each lived separately in the Home at different times, her ex-husband ultimately deeded his interest in the Home to her. However, the Debtor was uncertain whether she could keep up the mortgage payments and, also noting that she suffered from some bad memories in the Home, she and her two dependent daughters, now aged 11 and 16 years, moved out of the Home. She then attempted to list the Home for sale with a realtor.

The Debtor was unsuccessful in her initial efforts to sell the Home. She ultimately approached the Realtor to list the Home for sale with her. The Debtor claims, at this time and at present, that the Home was worth between $40,000 to $50,000; that the mortgage balance was about $28,000; and that she was only three months behind in mortgage payments of about $333/monthly when she listed the Home for sale with the Realtor.

The relationship of the Debtor and the Realtor advanced from one of strictly business to friendship. Ultimately, the Realtor, who claimed that she listed the Home for sale at $29,000 without success, agreed to purchase the Home from the Debtor for her own use. An Agreement of Sale, dated January 10, 1995, was executed by the Debtor in which the consideration was $1.00, subject to the following "Special Clauses:"

> Seller agree [sic] to allow the buyer to assume the [sic] existing [sic] mortgage [sic].
>
> Buyer agree [sic] to pay up back payments on the loan.
>
> Buyer agree [sic] to pay all cost [sic] to complete this transaction

A deed of the Home from the Debtor to the Realtor, in the name of Renee Tyson, dated March 5, 1995 ("the Deed"), was introduced at trial. Attached thereto were documents indicating a recording of the Deed on March 5, 1996. The coincidence in these dates caused the Debtor to aver, in the Amended Complaint, that the Deed should have been dated 1996. However, the dates of the Agreement of Sale and of the other pertinent documents referenced two paragraphs below appear to settle 1995 as the correct year of the Deed.

The "fair market value" of the Home listed on the transfer tax documents was $36,748.80. The Realtor somewhat reluctantly admitted that she falsely swore on that form, and surreptitiously added to the Deed, the statement that the transfer was "from sister to sister" to avoid paying local real estate transfer taxes. Also, the Deed was notarized by the Realtor herself, using the name Renee Jefferson in her capacity as notary.

The Realtor testified, contrary to the Debtor, that the mortgage was seriously in default at the time of the transfer and that the Home at that time required substantial repairs to its roof, ceilings, and plumbing. She claimed to have paid $13,942.28 in delinquent mortgage payments, verified by copies of the faces of a personal check and of a cashier's check made out to the mortgagee dated May 11, 1995, in the amount of $5,242.28; and dated November 3, 1995, in the amount of $8,700, respectively. She also claimed to have spent $15,000 in making repairs to the Home, but produced no documentary verification of same.

On July 8, 1996, the Realtor deeded the Home to the Son. The "fair market value" of the Home was listed at $37,099 on these transfer tax documents. The only explanation which the Realtor gave for this transfer was that it would encourage the Son, though a non-resident of the Home, to assist her with the mortgage payments.

On July 21, 1997, the mortgagee commenced proceedings to foreclose its mortgage on the Home, naming, as defendants, the Debtor individually and as trustee for her children, her ex-husband, and the Realtor, identified as the Home's "real owner." A mortgage payment delinquency dating back to March 1996 is alleged and the total due, including a principal mortgage balance of

$23,308.69, plus interest, fees, and charges, is alleged to be $28,824.64. The mortgagee has sought relief from the automatic stay in this case to proceed with this foreclosure, and the hearing on this motion is scheduled on March 5, 1998. We note that in the foreclosure complaint the mortgagee neglected to name the present "real owner" of the Home, the Son, as a defendant.

The Realtor admitted that the mortgage was seriously delinquent, although she indicated an intention or, more accurately, a hope that she could cure same. The Debtor expressed great concern about her status as a defendant in this action. She contended that the Realtor's failure to eliminate her liability as a mortgagee was a breach of the Realtor's promise, in the transfer transaction, to "assume" the mortgage.

After the trial we accorded the parties an opportunity to file briefs on or before February 13, 1998 (the Debtor), and February 20, 1998 (the Defendants and the Trustee). The Debtor's brief was not submitted until February 17, 1998, allegedly due to an illness of the secretary of the Debtor's counsel which was reported to us on February 13, 1998. In that brief the Debtor, coherently but inconsistently with her pleadings, argues that the fraud of the Debtor supporting the tort and UDAP claims in the Complaint was not the Realtor's failure to make payments, but her failure to properly assume the mortgage and eliminate the Debtor's liability thereon. Neither the Defendants nor the Trustee submitted any briefs.

### C. DISCUSSION

1. *The Debtor's Attempt to Institute This Action Directly Against the Defendants, Without Naming the Trustee as a Plaintiff, Presents Problems of Both Procedure and Substance for the Debtor.*

The Debtor has instituted the Proceeding as the sole plaintiff therein. The Trustee is named as a party Defendant, although no averments regarding the purpose of the Trustee's presence or his role in the Proceeding are included in the Complaint and no relief is sought for or against him.

This form of pleading creates several "standing" problems, possibly unnecessarily in light of the Trustee's appearance at trial and his apparent support of the Debtor's claims. One problem, as was recently identified by us in *In re Bryer,* 216 B.R. 755, 758–59 (Bankr.E.D.Pa.1998), is a failure to recognize that the Trustee's status as representative of the estate requires that he be the party suing to assert any pre-petition causes of action asserted by Chapter 13 debtors. *See* 11 U.S.C. § 323; *Richardson v. United Parcel Service,* 195 B.R. 737 (E.D.Mo.1996); and 8 COLLIER ON BANKRUPTCY, ¶ 1300.52[1], at 1300–97 (15th ed. rev.1997). *Cf. Krank v. Utica Mutual Ins. Co.,* 109 B.R. 668 (E.D.Pa.), *aff'd,* 908 F.2d 962 (3d Cir. 1990); and *Cain v. Hyatt,* 101 B.R. 440, 442 (E.D.Pa.1989) (Chapter 7 cases). The dual policies behind these standing concepts appear to be that (1) the Trustee's joinder would preclude his subsequently bringing a separate action to vindicate the same rights as the Debtor, thus subjecting the Defendants to potential multiple claims for the same conduct, in violation of Federal Rule of Bankruptcy Procedure 7019, incorporating Federal Rule of Civil Procedure 19(a)(2)(ii); and (2) it permits the Trustee to preserve scarce estate assets by prosecuting only those claims which the Trustee deems to be of sufficient merit to justify such treatment.

Furthermore, there is considerable authority for the proposition that a debtor can assert claims under 11 U.S.C. §§ 548 and 544, or any other avoiding-power claims, only through the medium of the Trustee or pursuant to 11 U.S.C. §§ 522(h), (g)(1). *See Hollar v. United States,* 174 B.R. 198, 202–03 (M.D.N.C.1994); *In re Merrifield,* 214 B.R. 362, 364–65 (8th Cir. BAP 1997); *In re Radziunas,* Bankr. No. 95–12104DWS (Bankr. E.D.Pa. Dec. 22, 1995); *In re Hill,* 152 B.R. 204, 206 (Bankr.S.D.Ohio 1993); *In re Redditt,* 146 B.R. 693, 696 (Bankr.S.D.Miss.1992); *In re Perry,* 131 B.R. 763, 769 (Bankr. D.Mass.1991); *In re Tillery,* 124 B.R. 127, 128 (Bankr.M.D.Fla.1991); and *In re Carter,* 2 B.R. 321, 322 (Bankr.D.Colo.1980). *But see In re Freeman,* 72 B.R. 850, 854–55 (Bankr. E.D.Va.1987); *In re Ottaviano,* 68 B.R. 238,

240–41 (Bankr.D.Conn.1986); *In re Einoder*, 55 B.R. 319, 321–24 (Bankr.N.D.Ill.1985); and *In re Boyette*, 33 B.R. 10 (Bankr. N.D.Tex.1983). *But cf. Hutchins v. Internal Revenue Service*, 67 F.3d 40 (3d Cir. 1995) (Chapter 7 debtor had standing to pursue a claim which descended upon him by the trustee's abandonment of same); and *Crossley v. Lieberman*, 868 F.2d 566 (3d Cir.1989) (without discussing the issue of standing, court affirms a judgment on a pre-petition claim in an action instituted solely by a Chapter 7 debtor).

At trial the Debtor invoked 11 U.S.C. § 522(h), (g)(1), which provide as follows:

(h) The debtor may avoid a transfer of property of the debtor or may recover a setoff to the extent that the debtor could have exempted such property under subsection (g)(1) of this section if the trustee had avoided such transfer, if—

(1) such transfer is avoidable by the trustee under section 544, 545, 547, 548, 549, or 724(a) of this title or recoverable by the trustee under section 553 of this title; and

(2) the trustee does not attempt to avoid such transfer.

(g) Notwithstanding sections 550 and 551 of this title, the debtor may exempt under subsection (b) of this section property that the trustee recovers under section 510(c)(2), 542, 543, 550, 551, or 553 of this title, to the extent that the debtor could have exempted such property under subsection (b) of this section if such property had not been transferred, if—

(1)(A) such transfer was not a voluntary transfer of such property by the debtor; and

(B) the debtor did not conceal such property; ...

The Debtor anticipated her perceived difficulty at clearing the "no voluntary transfer" hurdle of § 522(g)(1)(A) by citation to *In re Seidel*, 27 B.R. 347, 352 (Bankr.E.D.Pa.1983) (TWARDOWSKI, CH. J.), in which the debtors' lack of awareness of their legal rights in doing so was held to be sufficient to render their allowing a repossession of their truck to be an "involuntary" act. *See also In re*

*Mason*, 69 B.R. 876, 881–82 (Bankr.E.D.Pa. 1987) (payment made under court order not "voluntary"); *In re Johnson–Allen*, 69 B.R. 461, 470–71 (Bankr.E.D.Pa.1987), *rev'd on other grounds sub nom. Commonwealth of Pa., Dep't of Welfare v. Johnson–Allen*, 88 B.R. 659 (E.D.Pa.1988), *rev'd*, 871 F.2d 421 (3d Cir.1989), *aff'd sub nom. Pennsylvania Dep't of Public Welfare v. Davenport*, 495 U.S. 552, 110 S.Ct. 2126, 109 L.Ed.2d 588 (1990) (although payments were made voluntarily by the debtors, since they were made only in the face of threats of institution of legal actions to compel collection of the sums paid, they were not "voluntary transfers"); *In re Taylor*, 8 B.R. 578 (Bankr.E.D.Pa.1981) (GOLDHABER, CH. J.) (payments made voluntarily by the debtor, but only in the face of threats of foreclosure by collection agency, were held not to be "voluntary transfers"); and *In re Reaves*, 8 B.R. 177 (Bankr.D.S.D. 1981) (a payment made voluntarily by the debtor, but only after pressure from a bank officer, was held not to be a "voluntary transfer").

The *Seidel* case appears to present facts which are at the farthest point that one could go in reasoning that an apparently voluntarily act was in fact involuntary. The *Seidel* result appears to be influenced by the fact that, although the Debtors initially relinquished the truck voluntarily, they quickly reassessed the wisdom of their making the transfer at issue. Here, the Debtor attempts to extend *Seidel*'s holding yet farther. The Debtor did not change her mind regarding the advisability of the transfer until two and a half years after it took place, apparently because of the Realtor's non-payment of the mortgage beginning about a year after the transfer, and her inclusion in a foreclosure action filed over two years after the transfer. If the Debtor means to imply that any transfer which a debtor ultimately reconsiders is, by reason of the reconsideration, rendered involuntary, it is difficult to envision a situation in which § 522(g)(1)(A) could ever bar a debtor from proceeding. This appears to be an unlikely reading of that Code section because it would render it meaningless.

In her post-trial brief the Debtor attempts to emphasize the Realtor's failure to assume

the mortgage and eliminate her liability thereon as a factor of deception, rendering her otherwise voluntary act involuntary. As noted at pages 348–349 *infra,* we are not convinced that the Realtor's failure to eliminate her liability was a material factor in the transaction.

However, the foregoing difficulty of failing to satisfy the requirements of § 522(g)(1)(A), as well as fulfilling the requirement that the suit be brought in the name of the trustee, nevertheless appears easily resolvable. The Trustee has indicated an interest in pursuing the Proceeding. He can and could be substituted as a party plaintiff. This of course would have to be accomplished by an amendment to the Complaint, which also could include pleading the Realtor's failure to properly assume the mortgage as a claim.

There is another reason, more pertinent to the substance of the Proceeding, why the Complaint, if it were to be pursued, should be reconfigured to name the Trustee as a plaintiff. The Debtor would then be poised to attack the transfer at issue in the shoes of the Trustee. In such a posture the Debtor may be able to assert claims that she could not make in her own capacity as a party to the transaction regarding the validity of the transfer. *See In re Rice,* 133 B.R. 722 (Bankr.E.D.Pa.1991); and *In re Rice,* 126 B.R. 189, 192, 193–95 (Bankr.E.D.Pa.19910) (debtor could successfully attack a mortgage which was defectively notarized in the shoes of the trustee, but could not do so in her own capacity).[1]

### 2. *The Debtor Is Not Barred from Maintaining This Action by the Pertinent Pennsylvania Statute of Limitations.*

At trial we *sua sponte* raised the issue of whether most or all of the fraudulent conveyance counts were barred by the terms of 11 U.S.C. §§ 546(a)(1), 548(a), or any other applicable statutes of limitation or statutes of repose. In *In re Frascatore,* 98 B.R. 710, 718–19 (Bankr.E.D.Pa.1989), we held that

§ 546(a)(1), which precludes an action to avoid a transfer from being commenced more than two years after the entry of the order for relief, must be interpreted as a "statute of repose." Such a statutory provision, unlike a general statute of limitations, sets forth time strictures which are non-waivable. *Id.* at 718.

This reasoning applies equally to the operation of § 548(a), since that Code section restricts a trustee's claims under that statute to transfers "made or incurred within one year before the date of the filing of the petition, . . ." Whether we consider the date of the Debtor's transfer of the Home to the Realtor at issue to be March 5, 1995, on March 5, 1996, both dates clearly precede the filing of this case on October 1, 1997, by more than one year. In her post-trial brief the Debtor has wisely abandoned these claims for this reason.

However, it is well-established that the limitations period for fraudulent conveyance actions under applicable Pennsylvania state law is the two-year period set forth in 42 Pa.C.S. §§ 5524(3) and (7). *See In re Shields,* 148 B.R. 783, 786–87 (Bankr.E.D.Pa. 1993); and *Frascatore, supra,* 98 B.R. at 718. *Cf. In re Joshua Hill, Inc.,* 199 B.R. 298, 312–13 (E.D.Pa.1996) (relating to a comparable claim for fraudulent misrepresentations). The statute of repose which appears in § 546(a)(1) and was applied in *Frascatore* is not applicable here because the Proceeding was clearly instituted within two years from the appointment of the Trustee. *Compare Frascatore,* 98 B.R. at 718–19.

There are two reasons why the applicable state statute of limitations does not bar this action. First, the two-year limitation period, established as it is only through the general Pennsylvania statutes of limitations, is subject to waiver and has been waived by the Defendants' failure to plead it. *See, e.g., Zelson v. Thomforde,* 412 F.2d 56, 59 n. 10 (3d Cir.1969); *Van Sant v. American Express Co.,* 169 F.2d 355, 372 (3d Cir.

---

**1.** We of course express no opinion as to whether, if the Debtor or the Trustee were to plead same, the defective notarization of the Deed would support any relief in their favor on the basis of the second *Rice* decision and the authority cited in

support thereof. It must be recalled that the *Rice* decision merely allowed the debtor to avoid a security interest. The *Rice* debtor did not undertake to invalidate a transfer of property almost three years after the fact.

1947); *Frascatore, supra*, 98 B.R. at 718; *In re Gurst*, 79 B.R. 969, 979 (Bankr.E.D.Pa. 1987), *appeals dismissed*, C.A. No. 88–2092 (E.D.Pa. August 9, 1988), *aff'd sub nom. Gurst v. Philadelphia Consumer Discount Co.*, 866 F.2d 1410 (3d Cir.1988); and 88 B.R. 57 (E.D.Pa.1988); and *In re American Int'l Airways, Inc.*, 77 B.R. 490, 492 n. 1 (Bankr. E.D.Pa.1987). Second, as the Trustee intimated at trial, a transfer of real property is deemed made, for purposes of applicable law, 12 Pa.C.S. § 5106(1)(i),

> when the transfer is so far perfected that a good faith purchaser of the asset from the debtor against whom applicable law permits the transfer to be perfected cannot acquire an interest in the asset that is superior to the interest of the transferee;
>
> . . .

Perfection of the transfer of the Home sufficient to protect same from the claims of a good faith purchaser did not occur until March 5, 1996, when the Deed was recorded. The Proceeding was commenced on October 24, 1997, well within two years from March 5, 1996.

■ Therefore, the Debtor's state-law fraudulent conveyance claims are not barred by limitations. Her other three causes of action added in the Amended Complaint are not barred by limitations either, since they are subject to the two-year statute of limitations appearing in 42 Pa.C.S. § 5524(7) and the Debtor's claims in this regard were not discovered until her institution of the foreclosure action in July 1997. *Cf. Joshua Hill, supra*, 199 B.R. at 30, 313, 315–16. Moreover, any limitations defenses to these claims were also waived by the Defendants' failure to plead this defense.

3. *The Debtor Nevertheless Cannot Succeed in Her Fraudulent Conveyance Claims Because She Has Not Proven That She Failed to Receive "Reasonably Equivalent Value" in Exchange for the Home.*

Although the Debtor could not succeed in avoiding the transfer of the Home to the Defendants on the basis of the Complaint as presently conceived, *see* pages 342–344 *supra*, we believe that amendments could easily be made to the Complaint to overcome the Debtor's procedural problems. For this reason, we deem it appropriate to address the more critical and seemingly incurable substantive deficiency of these claims. The Debtor's remaining fraudulent conveyance claims are based upon 12 Pa.C.S. § 5105, which provides as follows:

### § 5105. Transfers fraudulent as to present creditors

A transfer made or obligation incurred by a debtor is fraudulent as to a creditor whose claim arose before the transfer was made or the obligation was incurred if the debtor made the transfer or incurred the obligation without receiving a reasonably equivalent value in exchange for the transfer or obligation and the debtor was insolvent at that time or the debtor became insolvent as a result of the transfer or obligation.

Insolvency is defined as a state where "the sum of the debtor's debts is greater than all of the debtor's assets." 12 Pa.C.S. § 5102(a). The transfer at issue eliminated the Home from the Debtor's inventory of assets. Her bankruptcy Schedules, admitted into the record, list remaining assets valued at $3,400. The foreclosure complaint naming her as a defendant establishes her liability, as a mortgagor of the Home, to be over $28,000, itself a figure far in excess of the value of the Debtor's assets. More than $11,000 in other secured and unsecured debts are also scheduled. The Debtor is therefore clearly insolvent.

■ The Debtor's substantive pitfall is establishing that she received less than "reasonably equivalent value" for her transfer of the Home to the Realtor. The Realtor, who, though an interested party, has some expertise in the subject-matter area to support her figures, testified that, at the time of the transfer, the value of the Home did not exceed the balance of the mortgage which she assumed. Only by her payment of almost $14,000 in mortgage payments, over $5,000 of which were paid within two months of the transfer and therefore establish that a large delinquency existed at the time of the transfer, has the mortgage balance been brought

to a point where it no longer exceeds the Home's value. Furthermore, the Realtor testified that she invested approximately $15,000 in repairs to the Home in order to bring its value within the $40,000 range.

The Debtor failed to counter any of these assertions with rebuttals. She claimed that the value of the Home was $40,000 to $50,-000, but did not contradict the Realtor's testimony that, prior to the transfer, she was unable to sell it at a listing of under $30,000. She did not call an appraiser. In her post-trial brief she attempts to rely on the City tax appraisals of approximately $37,000 and her unproven added assertion that such appraisals are generally deflated in support of her valuation. *But see In re Blakey*, 76 B.R. 465, 471–73 & n. 7, *modified on other grounds*, 78 B.R. 435 (Bankr.E.D.Pa.1987) (home valued at $12,000 despite City tax appraisal of $13,200). *See also In re Cole*, 81 B.R. 326, 329 (Bankr.E.D.Pa.1988) (court gives little, if any, weight to City tax appraisal, on the ground that the basis for same was, as here, not of record).

Furthermore, the Debtor did not rebut the Realtor's testimony that substantial repairs were needed to the Home as of March 5, 1995. The fact that the Debtor's ex-husband had inhabited the Home without her for some period and that both she and her ex-husband had vacated the Home for a considerable period would indicate that a claim that repairs to the Home were needed was not baseless.

The Debtor claimed that only $1,000 in mortgage payments was delinquent at the time of the transfer. However, the Realtor's payment of much higher amounts, combined with the Debtor's apparent lack of an incentive to keep up the payments on the Home, which she had vacated, lend credence to the Realtor's testimony.

We must observe, however, that we were not generally impressed with the Realtor's credibility. She very reluctantly admitted that she was totally responsible for the scheme to avoid payment of transfer taxes. She has herself been in and out of bankruptcy many times, although the failure of any party to establish this fact at trial causes us to make no more than mere mention of this fact. The subsequent transfer of the Home to the Son had all the earmarks of being engineered to distance the title of the Home from the Debtor. We find it difficult to credit the Realtor's testimony regarding her alleged $15,000 payments for repairs to the Home when same is not supported by a single document.

The Debtor appeared most concerned about the Realtor's failure to make the current mortgage payments and her resulting potential liability in a foreclosure action based on a failure of any party to make payments which she believed that she had no obligation to make herself. In her post-trial brief the Debtor articulates for the first time her claims as based upon the Realtor's failure to assume the mortgage, per the Realtor's alleged undertaking in the Agreement of Sale.

However, the pertinent Pennsylvania statute provides as follows:

### § 5103. Value

**(a) General rule.**—Value *is* given for a transfer or an obligation if, in exchange for the transfer or obligation, property is transferred or *an antecedent debt is secured or satisfied,* but value does not include an unperformed promise made otherwise than in the ordinary course of the promisor's business to furnish support to the debtor or another person (emphasis added).

The Committee Comment—1993 to this statutory enactment explains that the only type of unperformed promise which does not constitute value, as a matter of law, is an unfulfilled promise to furnish support to the debtor or another person. No such promise is at issue here. Thus, "pursuant to subsection (a), the general rule is that an unperformed promise may constitute value, and the amount of value to be ascribed to an unperformed promise in a particular case is a factual question." *Id.,* at sixth paragraph. As the authorities cited by the Debtor suggest, *e.g., In re Ozark Restaurant Equipment Co.,* 850 F.2d 342, 344 (8th Cir.1988); *In re Morris Communications NC, Inc.,* 75 B.R. 619, 628–29 (Bankr.W.D.N.C.1987); and 5 COLLIER ON BANKRUPTCY,

¶ 548.05[1][b], at 548–31 to 548–39 (15th ed. rev.1997), value must be determined by weighing all pertinent facts.

In and of itself, the Realtor's failure to make the subsequent mortgage payments, especially coming as it did after she had previously remitted almost $14,000 in prior delinquent and post-transfer mortgage payments, is not the sort of unperformed promise which would not be considered to constitute "value."

We recognize, but are unable to deem very material, the Debtor's arguments that she thought that the transfer to the Realtor would eliminate her liability on the mortgage. The only real support for any such expectations was the rather crude recitation in the Agreement of Sale that the Debtor agreed to "allow" the Realtor to "assume" the mortgage. There is some support for the motion that an assumption of a mortgage is distinct from taking a conveyance subject to a mortgage, in that the former contemplates the transferee's substitution as the party personally liable on the mortgage. *See* BLACK'S LAW DICTIONARY 112, 113 (definitions of "Assume," "Assumption," and "Assumption of mortgage") (5th ed.1979).

However, we find no indication that either party was aware of or made the distinction between the Realtor's assumption of the mortgage and the Debtor's merely conveying the Home to the Realtor subject to the mortgage. The only evidence that the Realtor undertook an assumption of the mortgage, as defined in the foregoing paragraph, is the recitation in the Agreement of Sale which does not express a commitment of the Realtor to assume the mortgage, as opposed to the Debtor's "allowing" her to do so. Furthermore, the Debtor denied any recollection of the Agreement of Sale and therefore failed to establish any reliance on her part on its language.

We note that the mortgagee never agreed to the substitution of the Realtor as its mortgagor in lieu of the Debtor. There is no evidence that it would have agreed to the Realtor's assumption of the mortgage if asked. The Debtor implies in her brief, in stating claims not articulated in her Complaint, that she reasonably thought that her liability would be eliminated by the transfer, irrespective of the mortgagee's agreement, but that the Realtor knew otherwise and, further, also knew that the Debtor misunderstood her continuing liability. However, had the Debtor considered her own acquisition of a deed to the Home from her ex-husband, she would have realized that, like her ex-husband, who was named in the foreclosure action, the transfer of title to the Realtor did not affect her mortgage liability.

Thus, while there was ample evidence that the Realtor knew that the Debtor would remain liable on the mortgage, there is no evidence that she was aware of the Debtor's belief to the contrary. Rather, we find that the relative sophistication of the parties was comparable to that in *In re Campuzano*, 1992 WL 308518 (Bankr.E.D.Pa. Oct. 20, 1992), where we declined to set aside a home transfer in somewhat analogous factual circumstances, although the debtor seeking to set aside that transfer was the buyer. Neither party exhibited great sophistication, although the Realtor had a slightly higher degree than the Debtor. This difference is not, in our view, sufficient to render this case one involving a very large degree of over-reaching on the part of the Realtor.

Other pertinent facts diminish the degree of over-reaching which the Realtor exhibited as to the Debtor in connection with the transfer. Although she is named as a defendant in the mortgagee's action to foreclose against the Home, it is unlikely that the Debtor will suffer any economic detriment as a result of the Realtor's payment delinquencies. When and if the foreclosure proceeding resumes in the event of continuing defaults by the Defendants and the mortgagee's obtaining relief from the automatic stay, it is highly unlikely that the mortgagee would pursue a deficiency against any party, least of all the Debtor, who will be likely to discharge any such obligation in her Chapter 13 case. Certainly any such damages could hardly be deemed a foreseeable consequence of the Defendants' mortgage delinquency. The main purpose served by making payments on the instant mortgage is retaining the ability to reside in the Home. The failure to make payments will therefore have the greatest practical effect

on the Realtor, whose ability to reside in the Home will be impacted by a foreclosure.

With the foregoing factual considerations firmly established, we approach the caselaw regarding the Debtor's requisite showing of a failure to receive "reasonably equivalent value" in the transfer transaction. In *In re Pinto Trucking Service, Inc.*, 93 B.R. 379, 388 (Bankr.E.D.Pa.1988), we held that a trustee seeking to avoid a transfer bore the burden of proving that the transferor received inadequate consideration as value in a conveyance attached as fraudulent. Consideration adequate to preclude a constructive fraudulent conveyance may be manifested in many different forms. *See, e.g., BFP v. Resolution Trust Co.*, 511 U.S. 531, 545–46, 114 S.Ct. 1757, 1765–66, 128 L.Ed.2d 556 (1994) (price received for real property at a non-collusive foreclosure sale is presumed to be "reasonably equivalent value"); *Mellon Bank, N.A. v. Metro Communications, Inc.*, 945 F.2d 635, 646–48 (3d Cir.1991) (indirect benefits obtained by a transferor in the form of enhanced credit availability and access to resources of related companies through a leveraged buyout constituted "reasonably equivalent value"); *In re Laramie Associates, Ltd.*, 1997 WL 67848, at *9 (Bankr. E.D.Pa. Feb. 12, 1997), *adopted*, 1997 WL 587288 (E.D.Pa. Sept. 8, 1997) (transactions not proven to be fraudulent conveyances where forbearances from payment of rent were offset by the benefits obtained by the payee from the pooling of funds generated by the payor in the past); *In re Durso Supermarkets, Inc.*, 193 B.R. 682, 703–09 (Bankr. S.D.N.Y.1996) (debtor-tenant failed to establish that termination of an above-market lease was a transfer for less than "reasonably equivalent value"); *In re Lease-A-Fleet, Inc.*, 155 B.R. 666, 675–77 (Bankr.E.D.Pa.Pa. 1993) (transactions not proven fraudulent conveyances where funds were passed among related entities in circular transactions); and *Pinto Trucking Service, supra*, 93 B.R. at 388–90 (settlement of lawsuit constituted sufficient consideration for transfer of realty worth $250,000).

The fact that the Debtor, two and a half years after making the transfer at issue, is now rethinking the wisdom of that transac-

tion does not tend to establish a lack of adequate consideration for the transfer. At the time of the transfer, the Debtor believed that effecting the transfer was in her best interests. "[A] party is generally bound to mistakes concerning the value" of an item purchased or sold, *Campuzano, supra*, 1992 WL 308518, at *5, citing *United States v. Goldberg*, 159 F.Supp. 151, 154 (E.D.Pa. 1956); and *Simeone v. Simeone*, 525 Pa. 392, 400, 581 A.2d 162, 165–66 (1990).

We note that, although the consideration paid to the Debtor by the Realtor for the Home was nominal, the Debtor's apparent lack of equity in the Home rendered its fair market value nominal. The burden to the Realtor of paying about $14,000 in delinquent mortgage payments appear to offset the benefits of the Realtor's obtaining the Home as a residence. Similarly, the Debtor has not proven that the benefit to her in being relieved from the necessity of making substantial mortgage payments did not outweigh her retaining a home which she was not utilizing as a residence nor renting.

We therefore conclude that the Debtor cannot succeed on the merits of her state-law fraudulent conveyance claim because she has not proven that she failed to receive "reasonably equivalent value" for the transfer of the Home within the meaning of 12 Pa.C.S. §§ 5105 and 5103(a).

4. *The Debtor Has Failed to Prove Any Damages or Fraudulent Conduct Towards Her on the Part of the Realtor, Thereby Requiring Judgment for the Defendants on the Final Three Counts of the Complaint.*

In Counts V and VI of the Complaint, respectively, the Debtor sought damages in excess of $25,000 from the Realtor as compensation for the alleged breach of the Realtor's implicit contractual undertaking to continue to pay the mortgage and for the Realtor's alleged fraud in failing to make these payments after she had promised to do so. The Debtor's success on her contractual claim depended on her proving damages which were foreseeable and were the proximate cause of the Realtor's actions. *See In re Pennsylvania Footwear Corp.*, 204

B.R. 165, 178 (Bankr.E.D.Pa.1997), citing *In re 222 Liberty Associates,* 101 B.R. 856, 863 (Bankr.E.D.Pa.1989); *In re Direct Satellite Communications, Inc.,* 96 B.R. 507, 515–16 (Bankr.E.D.Pa.1989); and RESTATEMENT OF CONTRACTS, § 330, at 509 (1932).

As noted in our discussion at pages 347–348 *supra,* we do not see, even at this point, how the Realtor's failure to relieve the Debtor of liability on the mortgage will cause any economic detriment to the Debtor. We can therefore hardly find that the Realtor could have foreseen any adverse consequences to the Debtor as the result of her conduct in the course of these events.

The alternative damage claim fails, again because of the Debtor's inability to prove any likely economic damages, as well as her failure to prove intentional, material misrepresentations in the transaction in issue on the part of the Realtor under the requisite "clear, precise, and indubitable" standard. *See Campuzano, supra,* 1992 WL 308518, at *3–*4, quoting *Ratay v. Lincoln Nat'l Life Ins. Co.,* 378 F.2d 209, 212 (3d Cir.), *cert. denied,* 389 U.S. 973, 88 S.Ct. 472, 19 L.Ed.2d 465 (1967), quoting in turn *Gerfin v. Colonial Smelting & Refining Co.,* 374 Pa. 66, 67–68, 97 A.2d 71, 72 (1953); and *Highmont Music Corp. v. J.M. Hoffmann Co.,* 397 Pa. 345, 350, 155 A.2d 363, 366 (1959). While the Debtor has presented evidence that the Realtor intentionally made material misstatements to the relevant City taxing authority in falsely averring that the transfer was between sisters, this fraud had no bearing on the Debtor's financial obligations to her. There is no evidence that the Realtor intended to default on the mortgage, and it is unlikely that she would have intentionally done so after paying about $14,000 towards the mortgage.

Finally, since we find insufficient proof of any fraud on the part of the Realtor, we find no "fraudulent conduct which creates a likelihood of confusion or of misunderstanding," 73 P.S. § 201–2(4)(xxi), on the part of the Realtor. As in *Campuzano, supra,* at *4, we also find no evidence of conduct directed towards the Debtor by the Defendants which was illegal, pervasively opportunistic, or otherwise fraudulent, such as is necessary to

support a UDAP claim. The merits of this final count of the Complaint must therefore likewise fail for lack of sufficient evidentiary support.

### D. CONCLUSION

Judgment will be entered in favor of the Defendants on all Counts of the Complaint.