KANNE, Circuit Judge.
 

 This case concerns a Chapter 13 debt- or’s right to file, prosecute and appeal a claim for relief that belongs to the bankrupt’s estate. After filing for Chapter 7 bankruptcy, Bruce K. Cable (“Cable” or “debtor”) sued his former employer under the Americans with Disabilities Act (“ADA”) for alleged injuries that occurred
 
 *470
 
 before his bankruptcy. Cable subsequently converted his case from Chapter 7 to Chapter 13 and prosecuted the case on his own for the benefit of the estate while the Chapter 7 trustee, Wayne J. Lennington (“Lennington” or “Chapter 7 trustee”), remained nominally as the party plaintiff. The trial court granted summary judgment against the Chapter 7 trustee, and the debtor appealed. The defendant, Ivy Tech State College (“Ivy Tech”), opposed the appeal on jurisdictional grounds, arguing that only Lennington as the named defendant had standing to appeal the ruling. We disagree and hold that a debtor-in-possession has standing to file, prosecute and appeal a chose in action belonging to the estate under Chapter 13. However, we affirm summary judgment for the defendant on the discrimination and retaliation claims.
 

 I. HISTORY
 

 Bruce Cable began teaching as an electronics instructor at Ivy Tech’s Muncie, Indiana, campus in the fall of 1989. He had been employed by Ivy Tech through a series of one-year contracts, the last of which expired in May 1994 and was not renewed. Ivy Tech claims that the decision not to renew was necessitated by a “reduction in force” and contends that it used neutral, objective criteria to determine which instructors would be laid off. Cable, who is paralyzed from the waist down and uses a wheelchair, counters that the decision resulted from illegal discrimination against people with physical handicaps and constituted retaliation against him for demanding improved working and learning environments for handicapped students and faculty.
 

 Cable’s evidence of discrimination attempts to establish two separate facts: that he was an advocate for the rights of handicapped people and that certain administrators disliked handicapped people. First, at the request of an Ivy Tech administrator in 1989, Cable prepared a list of concerns about handicapped accessibility on the Muncie campus, identifying changes in parking, accessibility and bathroom facilities needed to comply with the ADA. Cable also participated in a handicapped awareness group and was a vocal advocate for issues affecting handicapped people. The group, with Cable’s participation but not necessarily under his leadership, advocated improvements in handicapped accessibility on the Muncie campus. It disbanded in 1992 or 1993, at least a year before Cable’s termination. At the time of his firing, Cable alleges that the Muncie campus still was not fully in compliance with the ADA.
 

 Second, Cable alleges that statements by a school administrator indicate an insensitivity or prejudice toward handicapped people. According to Cable, Executive Dean Thomas Henry referred to handicapped people as “cripples,” considered Cable a “pain in the ass” and thought the awareness group was a drain on the school’s resources.
 

 By 1994, enrollment at the Ivy Tech campuses had dropped more than 10 percent. Henry requested an enrollment study of various programs offered on each of the campuses in Region Six, which included the Muncie campus. The study showed that enrollment had dropped most dramatically in four programs, including electronics. Henry decided to lay off one instructor from each program and redirect the money to more sought after programs, such as the physical therapy assistant, occupational assistant and general education programs. To decide who would be laid off, Ivy Tech had three objective goals: (1) retain program chairs; (2) retain instructors with the highest educational credentials; and (3) reward seniority. Applying these criteria to the Muncie electronics program, which had four instructors, the college decided to lay off Cable, who was not a program chair, did not have a master’s degree and had (by one month) the least seniority. Cable was informed in March 1994 that his contract would not be renewed. The same criteria were applied
 
 *471
 
 to the other programs and the other campuses.
 

 In May 1994, after Cable had been laid off, Ivy Tech posted an “opening” with the Indiana Department of Workforce Development (“IDWD”) for an electronics instructor in Region 6. The position was not actually “open,” but was at the time filled by Obrin Griffin, an immigrant from Africa. Griffin, who was one of the three instructors retained in Cable’s department, was ultimately retained in the position. Ivy Tech contends that the IDWD requested Griffin’s position be posted as a formality so that the IDWD could comply with an immigration regulation. The job description, hours and pay matched Griffin’s job, not Cable’s former job.
 

 Cable and his wife filed a joint petition for bankruptcy under Chapter 7 of the Bankruptcy Code after the 1994 school year, and Lennington was appointed as trustee. At about the same time, Cable filed a complaint with the Equal Employment Opportunity Commission and, in February 1996, received a “right to sue” letter. Cable filed a complaint on May 22, 1996, in the United States District Court for the Southern District of Indiana, and an amended complaint on August 1, 1996, accusing Ivy Tech of several constitutional violations along with discrimination and retaliation under the ADA.
 

 The district court granted summary judgment on the constitutional claims in February 1998. The dismissal of these claims was not appealed. In April 1998, the Chapter 7 trustee was substituted as the proper party, and soon thereafter Cable, unhappy with Lennington’s proposed settlement of the suit, exercised his statutory right to convert from Chapter 7 to Chapter 13 bankruptcy. Bankruptcy Judge Frank J. Otte granted the motion to convert on April 30, 1998, causing Len-nington to lose standing as trustee. The bankruptcy court appointed Robert A. Brothers, the standing trustee for Chapter 13 in the Southern District of Indiana, as trustee. On July 30, 1998, Judge Otte approved the confirmation order in Cable’s Chapter 13 bankruptcy and ordered that Cable turnover the “net proceeds from their pending chose in action ... to effect 100 percent payment to all creditors.”
 

 However, Brothers was not made a party to the ADA suit. For reasons that are unclear, the court and possibly the defense remained unaware that the bankruptcy action had been converted. Cable, who was prosecuting the suit through retained counsel approved by the bankruptcy court, apparently did not notify the district court of the conversion. Despite Lennington’s lack of standing in the case, the district court granted summary judgment on the ADA claims against Lennington on September 30, 1998. Brothers was formally substituted as party to the ADA action by this Court on December 2, 1998.
 

 Cable appealed,
 
 pro se,
 
 the grant of summary judgment. The defendant opposed on substantive grounds and also challenged the debtor’s standing to bring an appeal in his own name. Although neither the Chapter 7 or Chapter 13 trustee filed notices of appeal, this court asked Brothers and Ivy Tech to brief the issue of standing. Brothers strongly supported on both legal and policy grounds the right of debtors to prosecute and appeal their own choses in action. Brothers noted that as a practical matter, the standing trustee manages about 6,000 active estates involving hundreds of suits that potentially could benefit the creditors.
 

 Because an appellant’s standing is foundational to our ability to hear an appeal, we asked the bankruptcy trustee and defendant to brief this issue in addition to the substantive challenge to the summary judgment order, which was briefed by plaintiff Bruce Cable and defendant Ivy Tech.
 

 II. Analysis
 

 We first address the issue of whether a debtor has standing to appeal an adverse judgment in a claim for relief owned by
 
 *472
 
 the bankrupt estate in which the pre-con-version Chapter 7 trustee was incorrectly listed as the named party plaintiff. Ivy Tech would answer that question negatively on two grounds. First, it contends that only the Chapter 13 trustee can bring a claim for the benefit of the estate and second, because the Chapter 7 trustee was listed (incorrectly) as the plaintiff, only the Chapter 7 trustee can appeal.
 

 A. Debtor Standing
 

 Both parties marshal some support for the question of whether a Chapter 13 debtor can bring a claim on behalf of the estate. Admittedly, the decisions of the lower courts are not uniform. Brothers contends that Chapter 13 establishes the debtor-in-possession as a proper party to bring legal claims, which facilitates the prompt and efficient payment of creditors. Ivy Tech uses the decisions of some bankruptcy courts to argue that the trustee must act as the sole legal representative of the estate who alone can sue and be sued over its debts.
 

 Ivy Tech mistakes a fundamental difference between Chapter 7 and Chapter 13. Chapter 7 establishes a much more radical solution to indebtedness, requiring the liquidation of the debtor’s property, to which end Congress granted the trustee broad powers without interference from the debt- or. The trustee has sole authority to dispose of property, including managing litigation related to the estate.
 
 See
 
 11 U.S.C. §§ 541(a)(1), 704(1). Chapter 13, on the other hand, encourages the debtor to pay his debts over time by establishing a court-approved payment plan but leaving the debtor in possession of the estate.
 
 See 11
 
 U.S.C. § 1303 (debtor-in-possession has substantially same powers as the trustee in other chapters); § 1306(b) (debtor retains possession of estate except as limited by plan). The trustee acts as an adviser and administrator to facilitate the repayment of debts according to the plan.
 
 See id.
 
 § 1302.
 

 In liquidation proceedings,
 
 only
 
 the trustee has standing to prosecute or defend a claim belonging to the estate.
 
 See In re New Era, Inc.,
 
 135 F.3d 1206, 1209 (7th Cir.1998) (holding that Chapter 7 trustee has exclusive right to represent debtor in court);
 
 see also Lambert v. Fuller Co.,
 
 122 B.R. 243, 245 (E.D.Pa.1990);
 
 Gulley v. Winnebago County Forest Preserve Dist.,
 
 No. 91-C20231, 1992 WL 185938 (N.D.Ill. May 7, 1992);
 
 In re Davis,
 
 158 B.R. 1000, 1002 (Bankr.N.D.Ind.1993). The same cannot be said for trustees under the reorganization chapters. In those regimes, the debtor has express authority to sue and be sued. Bankruptcy Rule 6009, which applies to Chapters 7, 11 and 13, directs that “[w]ith or without court approval, the
 
 trustee or debtor in possession
 
 may prosecute or may enter an appearance and defend any pending action or proceeding by or against the debtor, or commence and prosecute any action or proceeding in behalf of the estate before any tribunal.” Fed.R.Bankr.P. 6009 (emphasis added);
 
 see also Chapman v. Currie Motors, Inc.,
 
 65 F.3d 78, 81 (7th Cir.1995) (holding that federal courts have jurisdiction to hear state law claims brought by Chapter 13 debtor-in-possession);
 
 In re Kutner,
 
 3 B.R. 422, 426 (Bankr.N.D.Tex.1980) (stating that Chapter 13 debtor has standing to sue and be sued). Furthermore, the Chapter 13 debtor has been considered analogous to Chapter 11,
 
 see e.g., Chapman,
 
 65 F.3d at 79, which grants the debtor full authority as representative of the estate typical of a trustee.
 
 See
 
 11 U.S.C. § 1107;
 
 Ford Motor Credit Co. v. Weaver,
 
 680 F.2d 451, 461 (6th Cir.1982);
 
 In re Halux, Inc.,
 
 665 F.2d 213, 216 (8th Cir.1981).
 

 Chapter 13 grants the debtor possession of the estate’s property, 11 U.S.C. § 1306(b), which is defined by § 541 to include “all legal or equitable interests of the debtor in property as of the commencement of the case.” 11 U.S.C. § 541(a)(1). The phrase “legal or equitable interests ... in property” includes
 
 *473
 
 choses in action and other legal claims that could be prosecuted for benefit of the estate.
 
 See In re Smith,
 
 640 F.2d 888 (7th Cir.1981) (“All causes of action become property of the estate under section 541.”);
 
 see also Bauer v. Commerce Union Bank,
 
 859 F.2d 438, 441 (6th Cir.1988);
 
 In re FBN Food Serv., Inc.,
 
 185 B.R. 265, 273 (N.D.Ill.1995);
 
 In re U.S. Marketing Concepts, Inc.,
 
 113 B.R. 487, 490 (Bankr.N.D.Ind.1990). The chose in action, here a discrimination case, belongs to the estate and was being prosecuted for the benefit of its creditors. It would frustrate the essential purpose of § 1306 to grant the debtor possession of the chose in action yet prohibit him from pursuing it for the benefit the estate. Significantly, the Second and Third Circuits have agreed that Chapter 13 debtors can bring claims in their own name.
 
 See Olick v. Parker & Parsley Petroleum Co.,
 
 145 F.3d 513, 515 (2d Cir.1998);
 
 Maritime Elec. Co. v. United Jersey Bank,
 
 959 F.2d 1194, 1209 n. 2 (3d Cir.1992);
 
 see also Donato v. Metropolitan Life Insurance Co.,
 
 230 B.R. 418, 425 (N.D.Cal.1999);
 
 In re Wirmel,
 
 134 B.R. 258, 260 (Bankr. S.D. Ohio 1991).
 

 Ivy Tech misreads
 
 In re Heath,
 
 115 F.3d 521 (7th Cir.1997), for the proposition that only a trustee can assert claims on behalf of the estate. Rather,
 
 Heath
 
 holds that the trustee may bring actions
 
 only for the benefit
 
 of the estate, rather than for the benefit of the debtor.
 
 Id.
 
 at 523-24. In
 
 Heath,
 
 the estate and its creditors would not have benefitted at all if the trustee succeeded in its claim because the creditors were already receiving full satisfaction under the plan. The potential recovery would have benefitted only the debtor. Here, the plan specifically directs that the potential proceeds from Cable’s Title VII claim benefit the estate and its creditors.
 

 Heath
 
 stands for the second proposition that § 323 vests the trustee in bankruptcy, as the representative of the estate, with exclusive authority to sue and be sued.
 
 Id.
 
 at 523 and cases cited therein; 11 U.S.C. § 323(a)-(b). We do not question that principle, but only note that
 
 Heath
 
 and the cases cited therein do not concern the authority of debtors-in-possession under Chapter 11 or 13. The several cases cited in
 
 Heath
 
 concern the exclusive right of trustees to bring suits under Chapter 7, which, in contrast to Chapters 11 and 13, does not recognize the legal entity debtor-in-possession.
 
 See In re Perkins,
 
 902 F.2d 1254 (7th Cir.1990) (Chapter 7 case);
 
 Vega v. Gasper,
 
 36 F.3d 417 (5th Cir.1994) (Chapter 7);
 
 In re Eisen,
 
 31 F.3d 1447 (9th Cir.1994) (Chapter 7);
 
 Bauer v. Commerce Union Bank,
 
 859 F.2d 438 (6th Cir.1988) (Chapter 7). Therefore, those cases cannot mean that a debtor-in-possession under Chapter 13 does not have the power to sue on behalf of the estate.
 

 Heath
 
 itself deals with Chapter 13, but not specifically with a debtor-in-possession. While this Court stated that the trustee exercises exclusive authority to sue and be sued,
 
 see Heath,
 
 115 F.3d at 523, we did not address the situation presented when a debtor-in-possession acts, pursuant to its statutory command, in the role of trustee. Under the reorganization chapters, the debtor-in-possession steps into the role of trustee and exercises concurrent authority to sue and be sued on behalf of the estate.
 
 See
 
 Fed. R. Bankr.P. 6009. To say that the trustee has “exclusive authority” does not mean that the debtor-in-possession cannot act as a trustee and therefore enjoy that same authority. Ruling otherwise would conflict with the explicit language of Rule 6009 that the “trustee or debtor in possession may ... prosecute any action or proceeding in behalf of the estate before any tribunal.”
 
 Id.
 

 Similarly,
 
 Richardson v. United Parcel Service,
 
 195 B.R. 737 (E.D.Mo.1996), concerned whether a debtor could bring a claim, not as debtor-in-possession for the benefit of creditors, but in his own name and apparently for his separate benefit. The court held that because the chose in action remained estate property and had not been abandoned pursuant to § 554, it had to be pursued for the benefit of the
 
 *474
 
 estate.
 
 See id.
 
 at 739.
 
 Richardson
 
 did not discuss whether the district court thought a debtor-in-possession could bring the action for the benefit of the estate.
 
 See id.
 

 Finally, defendant cited
 
 In re Gardner,
 
 218 B.R. 338 (Bankr.E.D.Pa.1998), but that case concerns the trustee’s avoidance power under § 548(a) of the Bankruptcy Code, 11 U.S.C. § 548(a). Section 548 unequivocally limits the avoidance power to the trustee, and for good reason: Its aim is to prevent the debtor from transferring property with the intent to “hinder, delay, or defraud” creditors.
 
 Id.
 
 It would invite abuse to allow debtors to avoid transfers that the debtor knew at the time of transfer would work to the detriment of the creditors. Such is not the case here where the debtor is attempting to recover damages in a suit that, under § 541, should benefit creditors.
 

 The court in
 
 Gardner
 
 also dismissed the debtor’s state law claims, but that dismissal appeared to rest on the claims’ insufficient evidentiary basis.
 
 Gardner,
 
 218 B.R. at 348-49. To the extent
 
 Gardner
 
 could be read to prohibit choses in action brought by a debtor-in-possession, it conflicts directly with Rule 6009 and the authority cited above and has not been followed by the only court outside of that district that considered the
 
 Gardner
 
 reasoning.
 
 See Donato,
 
 230 B.R. at 425. The proper practice for creditors and trustees is to allow the debtor-in-possession to exercise the powers assigned by §§ 1306(b) and 541, and sue in his own name for the estate.
 

 B. Substitution
 

 The Chapter 13 debtor has standing to bring claims that benefit the estate. However, the record in this case shows that the district court erroneously entered judgment against the Chapter 7 trustee, Lennington, rather than against the debt- or-in-possession or Chapter 13 trustee. Ivy Tech asserts that this error prevents anyone — trustee or debtor — from appealing the action since neither are named parties. The convenience of this rule for the defendant is obvious: It allows the defendant to secure a judgment against a party without standing and then use that mistake to prevent the real parties in interest from appealing. We do not believe such a result, with its attendant harm to creditors, was intended by Congress or required by the Bankruptcy Code.
 

 On April 30, 1998, Lennington ceased to have any authority to act or appear on behalf of the bankrupt estate. The discrimination case continued, however, prosecuted by Cable with counsel approved by the bankruptcy court, although nominally in the name of Lennington. No one doubted that the proceeds of the action would be the property of the estate and turned over for the benefit of its creditors. The defendant rests on the thin formalism that because the case remained titled in the name of the former trustee, then the debtor-in-possession could not appeal. Based on the facts of this case, we disagree.
 

 Conversions from Chapter 7 to another chapter are permitted by § 706 and governed by § 348, which provides that “[cjonversion of a case under section 706, 1112, 1208, or 1307 of this title terminates the service of any trustee or examiner that is serving in the case before such a conversion.” 11 U.S.C. § 348(e). The effect of that conversion is clear. At the moment the bankruptcy court granted Cable’s motion to convert, the Chapter 7 trustee lost jurisdiction over the case.
 
 See id.
 
 § 348(d);
 
 In re Grossot,
 
 205 B.R. 341, 343 (Bankr.M.D. Fla.1997);
 
 In re Rakosi,
 
 99 B.R. 47, 50 (Bankr.S.D.Cal.1989);
 
 In re Wells,
 
 87 B.R. 732, 736 (Bankr.N.D.Ga.1988). In effect, the trustee became just another creditor with standing to recover fees from the estate, but without standing to act on behalf of the estate, either to challenge the conversion or for any other purpose, including prosecuting or defending tort actions that belonged to the estate.
 
 Wells,
 
 87 B.R. at 736.
 

 
 *475
 
 An analogous situation arose in
 
 Grossot
 
 when the Chapter 7 trustee putatively authorized a settlement of an employment discrimination case on behalf of the bankrupt estate after the debtor had converted to Chapter 13.
 
 Grossot,
 
 205 B.R. at 343. The bankruptcy court approved the settlement of the discrimination cases on request of the Chapter 7 trustee, but “corrected] its own mistake” by vacating the order approving the compromise.
 
 Id.
 
 The court held that the trustee “no longer has standing to continue matters that had been commenced before conversion ... or any other activities.”
 
 Id.
 

 There appears to be no rule directly determining how substitution of parties should take place in choses of action owned by a bankrupt estate when the bankrupt converts from one. chapter to another. A motion to substitute the debtor-in-possession or Chapter 13 trustee for the former Chapter 7 trustee would certainly lend clarity to the ongoing litigation. Yet it is unnecessary because the substitution for a Chapter 7 trustee occurs by operation of law. The Bankruptcy Code strongly favors a seamless transition from one chapter to another that will best serve the interests of the creditors and the estate by, among other things, carrying over the filing dates, commencement date and order for relief from one chapter to another.
 
 See, e.g.,
 
 11 U.S.C. § 348. Bankruptcy Rule 2012(b) provides for automatic substitution of a successor trustee when a trustee ceases to hold office “in any pending action, proceeding or matter.” Fed. R.Bankr.P. 2012. Rule 25 of the Federal Rules of Civil Procedure, which applies to bankruptcy proceedings, also provides for automatic substitution of public officers who sue in their official capacity. Fed. R.Civ.P. 25(d). The rule expressly directs that any misnomer of the parties that does not affect their substantive rights shall be disregarded even without a motion or order for substitution.
 
 Id.
 

 Paragraph (c) of the same rule directs that substitution be accomplished by motion, but applies only to transfers in interest during the pendency of the lawsuit. The transfer in interest brings into doubt the ability of the court to enforce a judgment against a proper party, a potential difficulty resolved by requiring a motion to substitute. Here, conversion from one bankruptcy chapter to another does not affect the ownership interest as a Paragraph (c) transfer in interest would; regardless of the chapter, the property belongs to the estate.
 
 See
 
 11 U.S.C. § 541.
 

 When the conversion order was entered, the Chapter 7 trustee automatically dropped out of the discrimination ease, and the property of the estate, including the lawsuit, returned to the debtor under the guidance of the Chapter 13 trustee.
 
 See
 
 11 U.S.C. §§ 1302, 1306. At that point, Cable as debtor-in-possession became the real party in interest to prosecute the case on behalf of the estate. The oversight in changing the names of the bankruptcy trustees cannot frustrate the purposes of the Code and the interests of the creditors.
 

 Defendant Ivy Tech’s position is confusing and contradictory. While Ivy Tech correctly asserts that non-parties may not appeal judgments,
 
 see Marino v. Ortiz,
 
 484 U.S. 301, 304, 108 S.Ct. 586, 98 L.Ed.2d 629 (1988);
 
 In re VMS Ltd. Partnership Sec. Litig.,
 
 976 F.2d 362, 366 (7th Cir.1992), it claims that “only [the Chapter 7 trustee] had the standing to pursue an appeal” because the “parties in the District Court at the time judgment was entered were Ivy Tech and Wayne J. Lennington, Chapter 7 Trustee in Bankruptcy.” Ivy Tech argues contradictorily that Brothers as Chapter 13 trustee — and not the debt- or — -could have brought the appeal, apparently overlooking its own position that named parties alone can bring appeals. In the defendant’s view, the
 
 only
 
 party capable of bringing an appeal was the one who most clearly had no standing even to appear in court on behalf of the estate: the Chapter 7 trustee.
 

 Defendant’s citations to the statute defining the property of the estate, 11 U.S.C.
 
 *476
 
 § 541, and to several cases brought under Chapter 7,
 
 e.g., Davis,
 
 158 B.R. 1000;
 
 In re Goins,
 
 181 B.R. 45 (Bankr.S.D.Ohio 1994);
 
 Harris v. St. Louis Univ.,
 
 114 B.R. 647 (E.D.Mo.1990), are irrelevant to the issue of whether a Chapter 13 trustee or debtor has standing to bring an appeal. Chapter 7 requires that the debtor turnover possession of the estate’s assets to the trustee and does not recognize the debtor-in-possession as an entity. Therefore, whether a Chapter 7 debtor can bring a case in his own name sheds no light on whether a Chapter 13 debtor may.
 

 Here, the real parties in interest were the debtor-in-possession and Chapter 13 trustee, so there can be no claim that the appeal was brought by other than a real party as required by Rule 17 of the Federal Rules of Civil Procedure. Furthermore, the case was prosecuted before and after the conversion for the benefit of the estate and by its representative. This is not a case of a non-party arriving late in the game. In contrast,
 
 Moy v. Cowen,
 
 958 F.2d 168, 170 (7th Cir.1992), involved an appeal brought by a person who did not have standing at the trial court and therefore could not bring an appeal. As we determined above, Cable had standing at the trial court on behalf of the estate and thus could bring an appeal.
 
 Cf Moy,
 
 958 F.2d at 170 (“[Intervenor] has not established standing, and Article III of the Constitution does not permit us to adjudicate her appeal.”). Similarly, the other cases cited by defendant held that non-parties could not appeal, but the debtor-in-possession and trustee under Chapter 13 are the real parties in interest despite the oversight in substituting the new trustee for Lennington when the bankruptcy case was converted.
 

 C. Summary Judgment
 

 Reaching the merits of Cable’s appeal, the district court granted Ivy Tech’s motion for summary judgment on three independent grounds. First, the court held that Cable failed to include the retaliation allegation in his complaint to the EEOC, which effectively waived that claim. Second, Cable failed to produce evidence to satisfy the
 
 prima facie
 
 case of retaliation. Third, Cable failed to make a
 
 prima facie
 
 case of discrimination and failed to rebut Ivy Tech’s legitimate explanation for his dismissal.
 

 Summary judgment is proper when “the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.” Fed.R.Civ.P. 56(c);
 
 see also Celotex Corp. v. Catrett,
 
 477 U.S. 317, 322-23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). We review the district court’s order of summary judgment
 
 de novo, see Haefling v. United Parcel Serv.,
 
 169 F.3d 494, 497 (7th Cir.1999), and take as true all facts in favor of the non-moving party and all reasonable inferences that can be drawn from them.
 
 See Anderson v. Liberty Lobby, Inc.,
 
 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). While we apply special scrutiny to summary judgment in employment discrimination cases, we emphasize here that a genuine issue of fact “exists only when a reasonable jury could find for the party opposing the motion based on the record as a whole.”
 
 Pipitone v. United States,
 
 180 F.3d 859, 861 (7th Cir.1999) (citation omitted).
 

 1. The EEOC Charge
 

 The district court dismissed Cable’s retaliation claim because it fell outside the scope of his July 1994 EEOC complaint. A plaintiff may not bring claims in a lawsuit that were not included in the EEOC charge.
 
 See Alexander v. Gardner-Denver Co.,
 
 415 U.S. 36, 47, 94 S.Ct. 1011, 39 L.Ed.2d 147 (1974);
 
 Cheek v. Peabody Coal Co.,
 
 97 F.3d 200, 202 (7th Cir.1996). This requirement serves to enhance the administrative enforcement process by ensuring that the EEOC can conduct a- full investigation while also
 
 *477
 
 providing the employer with advance notice of the claim and an opportunity to resolve the dispute.
 
 See Harper v. Godfrey Co.,
 
 45 F.3d 143, 148 (7th Cir.1995). As such, it is a procedural requirement that we take seriously. A claim falls within the scope of the EEOC complaint if it is “like or reasonably related to” the charges in the EEOC complaint and if it “reasonably could have developed from the EEOC’s investigation of the charges before it.”
 
 Cheek,
 
 97 F.3d at 202.
 

 Cable alleged in his EEOC complaint, filed on July 12, 1994, that he had been fired because the standards used to make the termination decision had a discriminatory effect. He checked the “other” box and wrote in “disability” as the reason for his termination but failed to check the “retaliation” box. More significant than this technical defect, the body of his complaint fails even to hint at retaliation, much less develop a factual basis for such a claim. The main body of the complaint contained only three sentences:
 

 I. I was hired by the Respondent on September 5, 1989. I was terminated on May 7,1994.
 

 II. Management stated because of budget cuts.
 

 III. I feel I have been discriminated against on the basis of my disability, in that, they utilize standards, criteria and methods of administration that had the effect of discrimination.
 

 To be reasonably like or related, the charge in the lawsuit must describe the
 
 same conduct
 
 and implicate the
 
 same individuals
 
 as the charge in the EEOC complaint.
 
 See id.
 
 at 202-03. Viewed in the most favorable light for Cable, this statement of discrimination suggests that the method used to determine who would be laid off had the effect of discrimination, but does not implicate in any of the behavior alleged to have occurred over the previous five years that forms the basis for the retaliation claim. Based on this statement alone, the EEOC could not have known to look beyond the criteria used for the reduction in force as a source of discrimination.
 

 To supplement his bare EEOC charge form, Cable produced an affidavit dated June 16, 1994, which describes in great detail the discrimination and retaliation that he allegedly suffered at Ivy Tech. An investigator with the City of Muncie Human Rights Commission helped Cable prepare the affidavit and notarized his sworn signature. The city investigator forwarded the affidavit to the EEOC Indianapolis District Office on June 20, 1994, and a date stamp indicates that the EEOC received the affidavit on June 21.
 

 The district court refused to consider the affidavit as part of the complaint because “there was no showing that the document was filed with the EEOC charge. Therefore, Mr. Cable has not shown that this document was part of his EEOC charge.” Cable does not develop this issue on appeal as skillfully as we might expect an attorney to do, but bearing in mind that we liberally construe the pleadings of
 
 pro se
 
 litigants,
 
 see Haines v. Kerner,
 
 404 U.S. 519, 520, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972); Woods
 
 v. Thieret,
 
 903 F.2d 1080, 1082 (7th Cir.1990), Cable adequately raises the issue for appellate review. Consequently, we review
 
 de novo
 
 Judge Tinder’s conclusion that Cable made “no showing” that the affidavit was filed with the EEOC.
 

 The EEOC charge-filing requirement is not intended to erect “elaborate pleading requirements” or “let the form of the purported charge prevail over its substance.”
 
 Downes v. Volkswagen of America, Inc.,
 
 41 F.3d 1132, 1138 (7th Cir.1994). Courts have allowed varied types of filings to satisfy the requirement, including sworn affidavits attached to the charge itself.
 
 See, e.g., Cheek v. Western & Southern Life Ins. Co.,
 
 31 F.3d 497, 502 (7th Cir.1994);
 
 see also Taylor v. Virginia Union Univ.,
 
 193 F.3d 219, 239 (4th Cir.1999). The date stamp and' cover letter (also date stamped when received by the EEOC Indianapolis office) from the Muncie Human
 
 *478
 
 Rights Commission demonstrate conclusively that the EEOC received the affidavit contemporaneously with Cable’s filing of the agency discrimination charge form. There can be no question that the affidavit sufficiently pleads retaliation as a cause of his dismissal: “I fought for handicap rights. I tried to help bring Ivy Tech up to code. I really believe that and because of my disability I was let go.” Because the affidavit along with the EEOC form sufficiently provide notice of the charge, the dismissal of Cable’s retaliation charge for failure to exhaust the administrative remedy was error, but ultimately a harmless one as the following section makes clear.
 

 2. Retaliation
 

 Cable failed to present any competent evidence that he was fired in retaliation for demanding better treatment of and facilities for handicapped people. To prevail on a retaliation claim, a plaintiff must produce evidence that (1) he was engaged in protected expression; (2) he suffered an adverse employment action; and (3) a causal link existed between the two.
 
 See Talanda v. RFC Nat’l Mgmt. Co.,
 
 140 F.3d 1090, 1095 (7th Cir.1998). Cable’s retaliation complaint fails on the third prong of this test.' Other than his own affidavit, which is insufficient as a matter of law to withstand summary judgment,
 
 see Shank v. William R. Hague, Inc.,
 
 192 F.3d 675, 682 (7th Cir.1999), Cable produced no evidence of protected expression related to his dismissal. The only evidence, other than his own testimony, was a letter discussing handicapped accessibility problems that Cable sent in 1989. In
 
 Davidson v. Midelfort Clinic, Ltd.,
 
 133 F.3d 499, 511 (7th Cir.1998), we held that five months was too long between the filing of an EEOC charge and an employee’s supposedly retaliatory dismissal. It invites disbelief to suggest Ivy Tech waited five years to retaliate against him for this rather tepid foray into civil disobedience.
 

 Cable contends that other untoward comments by various administrators about handicapped people satisfy the causal link. It cannot be determined from the record when any of these comments were made in relation to the decision not to renew Cable’s contract. Even if actually said, these comments demonstrate callousness about handicapped people and the issues that affect them but are insufficient to provide evidence of a causal link behind Cable’s protected expression and his dismissal. Uncontradicted evidence shows that the decision to lay off Cable was motivated by the decline in enrollment, the need to reduce the staff and the objective criteria used to select the faculty member to lay off. The district court correctly decided the retaliation claim.
 

 S. Discrimination
 

 Under the ADA, a
 
 prima facie
 
 case of employment discrimination requires a showing “ ‘adequate to create an inference that an employment decision was based on a[n] [illegal] discriminatory criterion.’”
 
 Leffel v. Valley Fin. Servs.,
 
 113 F.3d 787, 792 (7th Cir.1997) (citation omitted). In the context of a reduction in force, where employees are laid off and not replaced, a plaintiff must establish that: (1) he is a member of a protected class; (2) he was adequately performing his job; (3) he was laid off in a reduction in force; and (4) employees outside the protected class were treated more favorably.
 
 See DeLuca v. Winer Indus. Inc.,
 
 53 F.3d 793, 797 (7th Cir.1995);
 
 Oxman v. WLS-TV,
 
 846 F.2d 448, 455 (7th Cir.1988). An employer may rebut the
 
 prima facie
 
 case by offering a legitimate, non-discriminatory reason for its decision, which the plaintiff must then show to be pretextual by a preponderance of the evidence.
 
 See Sarsha v. Sears, Roebuck & Co., 3
 
 F.3d 1035, 1039 (7th Cir.1993).
 

 No evidence suggests Ivy Tech deviated in any way from the even-handed application of the objective criteria. The record shows no proof nor even an allega
 
 *479
 
 tion that the school made an exception from the objective criteria to retain a non-handicapped person. Cable cannot show that similarly situated employees outside the protected class were treated more favorably. Furthermore, Ivy Tech has carried its burden in coming forward with a legitimate non-discriminatory reason for Cable’s dismissal, which Cable has utterly failed to prove was pretextual. Evidence of the subsequent job posting in May 1994 cannot support a finding of pretext because all uncontradicted evidence shows that posting related to Griffin’s position, not Cable’s. Therefore, it does not provide evidence of pretext sufficient to show that the proffered reason for Cable’s dismissal was not the real reason.
 
 See James v. Sheahan,
 
 137 F.3d 1003, 1007 (7th Cir.1998). He has, in short, failed to raise a question of fact sufficient to merit a trial.
 

 It bears noting that the district court analyzed Cable’s discrimination claim under the
 
 prima facie
 
 standard announced in
 
 Lejfel,
 
 which requires a plaintiff to show that the adverse job action was taken because of the plaintiffs disability.
 
 Leffel,
 
 113 F.3d at 793. While technically the court should have applied the standard for RIF cases since Cable’s termination was part of a larger, system "wide restructuring, Cable’s case fails under the
 
 Lejfel
 
 fi-amework as well. Cable did not establish causality because he brought no evidence of discrimination related to the decision to fire him. The comments allegedly made by Henry did not relate at all to Cable’s termination, as no evidence suggests when, where or in what context those comments were made. Cable asserts that his advocacy for the rights of handicapped people led to his dismissal, but the only evidence presented was that Cable was an advocate and that he was fired. It is only Cable’s conclusion that the one action caused the other. Simply put, in the three years this case progressed toward summary judgment, Cable managed to find only the thinnest evidence that anyone held animosity toward handicapped people in general, or Cable specifi-cally. None of that meager evidence related at all — in time or substance — to Cable’s termination.
 

 Even if all Cable’s proffered evidence is believed, he has failed to raise a genuine issue of material fact upon which a reasonable jury could find in his favor. The district court properly found in favor of Ivy Tech on the discrimination claim.
 

 III. ConolusioN
 

 Because a Chapter 13 debtor-in-possession has standing to sue on behalf of the estate, we hold that Cable can appeal the denial of summary judgment in his own name. In accordance with this decision, we direct that Bruce K. Cable as Debtor-In-Possession be substituted as the plaintiff-appellant. The district court’s grant of summary judgment on behalf of Ivy Tech ÍS AFFIRMED.