[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
This is an appeal by the plaintiff, Norwalk Board of Education, from a September 29, 2000 decision of a human rights referee of the defendant, Commission on Human Rights and Opportunities ("CHRO"), finding discrimination against and ordering remedial orders in favor of the defendant, John J. Saunders.
Saunders, as complainant before the CHRO, alleged that the plaintiff discriminated against him in the terms and conditions of his employment and denied him a promotion because of his race, African American; his color, Black; and his age, 49, in violation of General Statutes §46a-60 (a)(1); Title VII of the Civil Rights Act of 1964 as amended,42 U.S.C. § 2000e et seq. and the Civil Rights Act of 1991; and the Age Discrimination in Employment Act ("ADEA") of 1967,29 U.S.C. § 621-634 as enforced through General Statutes § 46a-58
(a). The plaintiff's appeal is authorized by General Statutes §§ 46a-94a
and 4-183 of the Uniform Administrative Procedure Act ("UAPA"). CT Page 13468-hi
Saunders filed his complaint with the CHRO on September 15, 1997. (Return of Record ("ROR"), Volume 1, Item 46, pp. 313-15.) The allegations of the complaint were investigated by the CHRO and on November 2, 1998, certified to a public hearing before a human rights referee. (ROR, Volume 1, Item 45, p. 312.) The hearing was held on diverse dates in April and May, 2000, and the human rights referee made findings of fact which may be summarized as follows:
 1. Saunders, a black African American man, was forty-nine years of age at the time of the filing of the complaint.
 2. Saunders began employment at the plaintiff's Nathan Hale Middle School in 1974 as a teacher and had been employed for twenty-three years at the time of the filing of the complaint. He is still employed as a teacher with the Nathan Hale Middle School.
 3. On May 19, 1997, Saunders applied for the assistant principal position at Nathan Hale Middle School.
 4. An interview committee consisting of a teacher, Karen Kinlock; a student, Alexandria Reilly; a parent, Joanna Seiter; and the principal, Joseph Cloherty, interviewed Saunders along with other applicants, including Michael McGrath.
 5. Prior to the interview, Cloherty told Seiter that his main needs were to have the assistant principal possess computer scheduling and pupil placement team ("PPT") experience. PPT tasks involve special education students, but special education experience was not raised at this time.
 6. The plaintiff maintains an affirmative action plan, requiring that the interviewing committee be "composed of the Director of Personnel, Director of Curriculum and Assessment and other administrators selected by the Superintendent. . . . Teachers and parents may be included in the interview process." It also requires that "minority representation will . . . be included as part of the interviewing team." (ROR, Volume 1, Item 1, p. 4, ¶¶ 9, 11.) CT Page 13468-hj
 7. The affirmative action plan requires the superintendent and the principal of the school to interview all applicants for assistant principal positions when a vacancy exists.
 8. The minority representative on the interview team was a student, Alexandria Reilly, who is African American. Saunders had been on many interview committees with Cloherty and had never seen a student on any of them before. Kinlock had been on approximately six interviewing committees and this was also the first interviewing committee that she was on with a student.
 9. The Superintendent, Dr. Ralph Sloan, did not participate in the interview for the assistant principal position in question. He routinely did not follow the affirmative action plan and hence did not interview assistant principal candidates.
 10. Saunders sent a letter to Thomas Turner, the Human Relations Representative for the plaintiff, informing him of his dismay and concerns with the interviewing process. Turner sent a letter to Saunders informing him that he sent a letter to Dr. Sloan to comply with the affirmative action plan when hiring administrators. No further action was taken by the plaintiff in response to Turner's letter to Dr. Sloan.
 11. The job posting of the assistant principal position consists of duties and responsibilities, required qualifications and any preferred qualifications.
 12. The preferred qualifications are job characteristics "unique to the specific school" and are determined by the person filling out the requisition form and in the present case that person was Cloherty. (ROR, Volume 1, Item 1, p. 7, ¶ 25.) CT Page 13468-hk
 13. Cloherty did not include the PPT and special education experience on the requisition form in order for them to be listed as required or preferred on the job posting for the assistant principal position. The job posting listed as some of the "duties and responsibilities" of the assistant principal position that he/she attend PPTs and work closely with special education students.
 14. The job posting did not list computer scheduling as a required qualification but instead listed it under preferred qualifications and requested that the applicant be "familiar" with such qualifications. (ROR, Volume 1, Item 1, p. 8, ¶ 28.)
 15. The plaintiff conceded that Saunders met the minimum qualifications for the position of assistant principal.
 16. Saunders received a letter dated June 26, 1997 from the plaintiff's representative informing him that he did not receive the position and that it was awarded to McGrath. McGrath is white and was twenty-eight years old at the time of the interview.
 17. McGrath was hired as a guidance counselor at Nathan Hale Middle School in 1996 and had been employed one year at the time the assistant principal position was posted. In May 1997, McGrath applied for the assistant principal position.
 18. At the time that McGrath applied for the position he had two years of classroom experience and had worked as a guidance counselor for four years, partly including working in New York. McGrath had held a Connecticut Provisional Educator Certificate for School Counselor that did not permit him to teach. CT Page 13468-hl
 19. At the time McGrath applied for the assistant principal position, his provisional certificate possessed a deficiency. The deficiency was due to a course in special education that had not been taken. McGrath eventually cured his deficiency, which allowed him to be an administrator, but did not permit him to teach a course.
 20. During McGrath's time as a guidance counselor, the former assistant principal had trained him in computer scheduling and thereafter McGrath assisted with the computer scheduling at Nathan Hale Middle School.
 21. McGrath does not hold a master's degree in education, but in guidance and counseling. He holds a bachelor's degree in music. Saunders possesses a master of science degree in education and a bachelor of science degree in elementary/secondary education.
 22. The Nathan Hale Middle School has a large population of special education students and these students mainstream into the applied arts department, which is where Saunders teaches.
 23. Cloherty believed that Saunders had more experience in teaching than McGrath and was an effective teacher. Ms. Kinlock also believed that Saunders had excellent teaching skills.
 24. Ms. Seiter did not put much weight on teaching experience when deciding her choice for assistant principal. She chose McGrath for the position because he had PPT and computer scheduling experience, which were the primary areas that were to assist the principal.
 25. The plaintiff never has hired any African American assistant principals for the middle schools. Of the four housemaster positions in the high school, two of them are filled with African Americans. CT Page 13468-hm
(ROR, Volume 1, Item 1, pp. 4-15.)
Based on these findings of fact, the human fights referee concluded that Saunders had satisfied the requirements of a prima facie case and that the plaintiff had articulated the non-discriminatory reason that McGrath was more qualified for the position. The referee also concluded that the non-discriminatory reason advanced by the plaintiff was a pretext and not the real reason for its actions. She pointed to such matters as the inconsistency between the written job posting and the hiring criteria actually given to the affirmative action panel. She also pointed to violations of the affirmative action plan and the lack of black assistant principals in the plaintiff's middle schools. (ROR, Volume 1, Item 1, pp. 16-30.)
The human rights referee gave relief for Saunders. She ordered the plaintiff to compensate Saunders with back pay as well as front pay until he had been offered another assistant principal position, rejected this opportunity, or retired, whichever occurred first. (ROR, Volume 1, Item 1, pp. 35-36.) The plaintiff has appealed from these orders. As the plaintiff has alleged and proven possible injury based upon the orders, aggrievement is found.
The court reviews the plaintiff's claims on this appeal under the substantial evidence test. "Judicial review of an administrative agency decision requires a court to determine whether there is substantial evidence in the administrative record to support the agency's findings of basic fact and whether the conclusions drawn from those facts are reasonable. . . ." (Citation omitted; internal quotation marks omitted).Adriani v. Commission on Human Rights Opportunities, 220 Conn. 307,314-15 (1991). "We begin our analysis by noting that our review of an agency's factual determination is constrained by the [UAPA]. Specifically, General Statutes § 4-183 (j)(5) mandates that a court shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact. The court shall affirm the decision of the agency unless the court finds that substantial rights of the person appealing have been prejudiced because the administrative findings, inferences, conclusions, or decisions are . . . clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record. . . . We have interpreted the standard of review set forth in the act as limiting our review such that [w]ith regard to questions of fact, it is neither the function of the trial court nor of this court to retry the case or to substitute its judgment for that of the administrative agency. . . . This substantial evidence standard is CT Page 13468-hn highly deferential. . . ." (Citations omitted; internal quotation marks omitted.) Salmon v. Department of Public Health Addiction Services,58 Conn. App. 642, 660-61, cert. granted on other grounds, 254 Conn. 926
(2000); Ames Dept. Stores, Inc. v. Commission on Human Rights Opportunities, 45 Conn. Sup. 276, 283 (1997), aff'd, 48 Conn. App. 561, cert. denied, 245 Conn. 924 (1998) (in applying the substantial evidence test, court defers to agency's decision on matters of proof).
The plaintiff and defendants agree that this is a "disparate treatment" case, with no direct proof of discriminatory animus. Thus before the CHRO, Saunders had to establish a "prima facie" case of race, color and age; then the plaintiff was given an opportunity to "articulate" a legitimate, nondiscriminatory reason for its actions. McDonnell DouglasCorp. v. Green, 411 U.S. 792, 804, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973);Ann Howard's Apricots Restaurant, Inc. v. CHRO, 237 Conn. 209, 225
(1996).
There is no claim by the plaintiff that the human rights referee erred in concluding as follows: "To establish a prima facie case [Saunders] must be in a protected class, have applied for the position in question, qualified for the position, and [the plaintiff] had to reject [Saunders] and hire someone not in the protected class. . . . [Saunders] is Black, African American, and over the age of forty, he is forty-nine. . . . [Saunders] did apply on May 19, 1997 for the position of assistant principal with [the plaintiffs] school, Nathan Hale Middle School. . . . To be qualified, [Saunders] need only meet the minimum qualifications for the job to establish a prima facie case. . . . [The plaintiff] . . . conceded that [Saunders] met the minimum qualifications of the position and therefore was qualified. . . . [The plaintiff] rejected [Saunders] and hired Mr. McGrath, who is both younger than [Saunders] and White, and thus not in the same protected classes. . . . Thus, [Saunders] has met his burden of proving a prima facie case." (ROR, Volume 1, Item 1, pp. 17-18.)
In this appeal, Saunders does not disagree with this statement of the human rights referee: "[The plaintiff] offers as its legitimate nondiscriminatory reasons for not promoting [Saunders] that Mr. McGrath was the most qualified in that he had more experience with PPTs, computer scheduling and that he interviewed better by giving more detailed responses. . . ." (ROR, Volume 1, Item 1, p. 18.) The plaintiff "has met its burden by producing legitimate nondiscriminatory reasons. . . ." (ROR, Volume 1, Item 1 p. 19.) CT Page 13468-ho
Thus, the issue of the prima facie case and the corresponding employer reasons are not raised in this administrative appeal, and the remaining issue becomes whether Saunders proved that the reason advanced by the plaintiff was a pretext for the actual reason, a discriminatory one. Saunders had to prove that the reasons given by the plaintiff for its failure to select him for the assistant principal's position were "unworthy of credence." Reeves v. Sanderson Plumbing Products, Inc.,530 U.S. 133, 120 S.Ct. 2097, 2106, 147 L.Ed.2d 105 (2000); McDonnellDouglas Corp. v. Green, supra, 411 U.S. 805; Ann Howard's ApricotsRestaurant Inc. v. CHRO, supra, 237 Conn. 226.
"A court is to examine the entire record to determine whether the plaintiff could satisfy his ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff. . . ." (Citations omitted; internal quotation marks omitted.)Byrnie v. Town of Cromwell, Bd. of Educ., 243 F.3d 93, 102 (2d Cir. 2001). "Proof that the defendant's explanation is unworthy of credence is . . . one form of circumstantial evidence that is probative of intentional discrimination, and it may be quite persuasive. A combination of factors, any of which judged on their own would be much less compelling, provide sufficient evidence to allow a reasonable [trier of fact] to conclude that [the plaintiffs] explanation for failing to hire [the complainant] was a pretext for impermissible discrimination. " (Internal quotation marks omitted; parentheses omitted.) Id.
The plaintiff's case turns on whether the findings of pretext made by the human rights referee are clearly erroneous.[1] First the plaintiff points to the conclusion of the referee that it "deviat[ed] from the Affirmative Action Policy . . . that the [plaintiff] does not value its Affirmative Action Policy highly and does not take the hiring of minorities seriously. . . ." (ROR, Volume 1, Item 1, pp. 27-28.) The plaintiff disagrees with any finding of deviation.
The first violation of the affirmative action plan was found to be allowing the eighth grade student to be on the interview panel.[2] The plaintiff claims that the plan is silent on the presence of students and therefore they should be allowed. The court finds, however, that there is sufficient evidence to support the human rights referee's conclusion that a student would not be taken seriously on such a panel. The panelists were probing issues of qualifications and interpersonal relationships. (ROR, Volume 1, Item 1, p. 28; Volume 4, Item 49, pp. 536-37; Volume 5, Item 50, pp. 904, 912.) In addition, Saunders had had the student in his classes and was embarrassed by her presence. (ROR, Volume 5, Item 50, p. CT Page 13468-hp 770.) Kinlock, a teacher and a member of the interview panel, testified that she had served on several interview panels and this was the first and only time she had seen a student serve on one. (ROR, Volume 4, Item 49, p. 662.) Saunders also testified that he had served on several interview panels and this was the first time he had ever seen a student serve as the minority representative on an interview panel. (ROR, Volume 5, Item 50, p. 781.)
The plaintiff contests the finding, (ROR, Volume 1, Item 1, p. 6), that Sloan, the superintendent of schools, failed to interview the applicants for the position. While such an interview is required by the affirmative action plan, (ROR, Volume 6, Item 62, p. 954), the plaintiff relies on Sloan's position that he may turn such duties over to others. The court agrees with the conclusion of the human rights referee that while Sloan might delegate "his responsibility of interview the assistant principal candidates . . . there was no testimony as to who received the responsibility. . . ." (ROR, Volume 1, Item 1, p. 27.)
The process of selecting a new assistant principal started with the advisory panel that gave a report to Nathan Hale's principal, Cloherty. The recommendation was passed along to Sloan, the superintendent of schools, and then to the plaintiff, the final decision-maker. (ROR, Volume 4, Item 49, p. 488.) That the panel formed under the affirmative action plan was merely advisory, as the plaintiff argues, does not undercut the human rights referee's findings of pretext due to procedural violations in the functioning of the panel.[3] As Saunders points out, the affirmative action plan was required by General Statutes § 46a-68. Its violation "can raise a question as to the good faith of the process where the departure may reasonably affect the decision. . . ." (Citations omitted; internal quotation marks omitted.) Stern v. Trustees of ColumbiaUniversity, 131 F.3d 305, 313 (2d Cir. 1997): see also Hill v. SeaboardCoast Line R. Co., 885 F.2d 804 811 (11th Cir. 1988) (pretext shown on violation of standard promotion procedure); Bass v. Board of CountyCommissioners, 256 F.3d 1095 (11th Cir. 2001) (pretext correctly found where affirmative action interview process flawed).
The human rights referee found that the principal, Cloherty, had prepared a detailed job posting that had not made PPT and special education experience required qualifications. Then Cloherty spoke to the affirmative action panel about PPT's and special education and stressed their central importance in the selection process. (ROR, Volume 1, Item 1, pp. 22-23.) The human rights referee found that this change in approach had unfairly influenced the panel[4] and was pretextual. (ROR, Volume 1, Item 1, pp. 19-20.) The plaintiff attacks the referee's CT Page 13468-hq conclusion, arguing that PPT's and special education were listed on the job posting under other headings. It has been held, however, that "[e]vidence that an employer has misjudged the qualifications of candidates is probative of whether the employer's reasons are pretexts for discrimination." (Citations omitted; internal quotation marks omitted.) Mohammed v. Callaway, 698 F.2d 395, 401 (10th Cir. 1983). Here, there is a finding that the principal mishandled the stated qualifications that he had prepared himself. Further, the deviation from the "even-handed application of the objective criteria" of a job posting may lead to a finding of pretext. Cable v. Ivy Tech. State College,200 F.3d 467, 478-79 (7th Cir. 1999). The court concludes that the human rights referee correctly found that the principal's informal rearrangement of the job posting constituted pretext.[5]
The plaintiff also argues that the human rights referee erred in noting the lack of black assistant principals in its middle schools to support a finding of pretext. The Supreme Court has, as the referee has noted, (ROR, Volume 1, Item 1, p. 28), allowed the use of work force evidence to "demonstrate that the employer's actions were not discriminatorily motivated." (Brackets omitted; internal quotation marks omitted.) Reevesv. Sanderson Plumbing Products, supra, 530 U.S. 153. The referee did not err in making a finding exactly the opposite to that in Reeves on this record, and using the lack of minorities as a factor in deciding that discrimination had taken place.
Since the finding of pretext is supported by substantial evidence, the court may defer to the hearing officer's conclusion[6] that Saunders met his burden of proof that the plaintiff was liable for race, age and color discrimination against Saunders. (ROR, Volume 1, Item 1, p. 30.) "Thus, a plaintiff's prima facie case, combined with sufficient evidence to find that the employer's asserted justification is false, may permit the trier of fact to conclude that the employer unlawfully discriminated." Reeves v. Sanderson Plumbing Products, supra, 530 U.S. 148. This is not an instance where the record "conclusively reveal[s] some other, nondiscriminatory reason for the employer's decision, or [where Saunders] created only a weak issue of fact as to whether the employer's reason was untrue and there was abundant and uncontroverted independent evidence that no discrimination occurred." Id.[7]
The CHRO's decision correctly applied the law to the facts as found and its conclusions reasonably follow from such facts. Therefore the appeal is dismissed.
Henry S. Cohn, Judge CT Page 13468-hr